246 So.2d 218 (1971)
James FISHER
v.
ALBANY MACHINE & SUPPLY CO., et al.
No. 8250.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
Rehearing Denied April 19, 1971.
Writ Granted June 2, 1971.
*219 Ronald F. Plaisance and N. A. Danna, Jr., New Orleans, for appellant.
Peter A. Feringa, Jr., of Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans; John A. Bivins, of Mouton, Roy, Carmouche & Hailey, Lafayette; Paul Cassisa and Walter M. Babst, of Bernard, Michelot & Cassisa, New Orleans, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
Individually, and as natural tutrix of her minor children, Beverly Ann Fisher, Irma Dean Fisher, James Worthy Fisher, Jr., and Keith Fisher, plaintiff, Thelma Leonard, widow of James Worthy Fisher, appeals the judgment of the trial court sustaining declinatory exceptions of lack of jurisdiction filed in Suit Number 8250 (a survival action by plaintiff to recover for injuries to her deceased husband) by defendants, Albany Machine & Supply Company *220 (Albany) and Dorris Company (Dorris). In both Suit Number 8250 and companion case Number 8251, 246 So.2d 230 (a wrongful death action brought by plaintiff individually and as natural tutrix to recover for the death of her husband), plaintiff appeals from summary judgments entered in favor of defendant Wagner Electric Corporation. Declinatory exceptions of lack of jurisdiction filed by Albany and Dorris in the wrongful death action (8251) have not yet been disposed of below. We affirm the judgment of the trial court.
Decedent Fisher instituted Suit Number 8250 (4431 on the docket of the trial court) to recover damages for personal injuries sustained in an accident which occurred September 29, 1965, in the course of his employment by defendant, Terrebonne Lumber and Supply Co., Inc. While working near a machine known as an Albany Trimmer 20 foot Model No. 40WA saw, Serial Number 214, Fisher was struck by a piece of lumber ejected from the device. Fisher died and his wife and children were properly substituted as parties to his action, thereby converting the matter into a survival action. Following Fisher's demise, Suit Number 8251 (Number 4608 on the docket of the lower court) was instituted by the widow to recover for decedent's alleged wrongful death.
Both actions allege in substance that the Albany Trimmer was improperly and unsafely manufactured and that defendants were negligent in failing to warn decedent of dangers inherent in the machine. The named defendants in both actions are: Terrebonne Lumber and Supply Company, Inc. and its alleged successor, Edward Hines Company; Albany (manufacturer of the saw allegedly causing decedent's injury); Wagner (maker of the electric motor which constituted a component of the machine); Dorris (manufacturer of a speed reducing device incorporated in the trimmer); Wilco Machine Works, Inc. (an independent jobber which retailed the saw); Nichols Construction Company (the contractor which installed the Albany Trimmer); various officers and directors of Terrebonne Lumber and Supply Company, and Terrebonne's unnamed insurer and unnamed John Doe.
Albany, an Oregon corporation, and Dorris, a Missouri corporation, contend they are not amenable to the jurisdiction of this state because they are foreign corporations who neither do nor are authorized to do business in this state. Dorris maintains that its only office and place of business is in Missouri; that it has no office, place of business, agent, employee or representative in Louisiana; that it never consented to suit against it in this state; that it did not sell in Louisiana or ship its speed reducers into this state, and that the speed reducer in question was sold to the Alfred Halliday Company of Louisville, Kentucky. Dorris also objected to the manner in which it was served with process.
The exceptions filed by Albany and Dorris were heard April 13, 1967, submitted on memoranda and taken under advisement. On June 15, 1967, the trial court entered judgment sustaining the exceptions filed by Albany and Dorris. Formal judgments sustaining said exceptions were signed on October 13, 1967, in the case of Albany and on December 11, 1967 in the case of Dorris. No notice of said judgments was given appellant. On December 14, 1967, appellant applied for a rehearing which was denied by formal judgment rendered May 21, 1970. On June 4, 1970, plaintiff appealed both the judgments sustaining defendants' exceptions and the decree denying her application for rehearing on the ground of newly discovered evidence. On June 10, 1970, summary judgment was granted in favor of Wagner. Said judgment was appealed that same day.
We preface our analysis of the facts by noting that appellant attaches to her brief various documents which were not introduced of record in the court below. In this respect we note, among other things, answers to interrogatories propounded *221 to H. J. Mire, General Manager, Terrebonne, and the deposition of one T. B. Lawrason, Jr., taken at the instance of defendant, Nichols Construction Corporation. In disposing of the issues before us, we disregard the above mentioned answers to interrogatories and deposition, as well as all other documents which were not introduced in the trial below. Albany's and Dorris' exceptions must be determined in the light of the evidence properly adduced in the trial court.
An affidavit of Albany's Secretary-Treasurer, Rene E. Fritz, Jr., asserts that Albany did not sell, ship or deliver the trimmer in or to Louisiana. Albany maintains it sold the saw in question to Wilco Machine Works, Inc. and shipped same to Wilco in Memphis, Tennessee. Albany acknowledges that it sells a complete line of saw mill machinery over the entire United States but operates in the deep south only through independent jobbers. Additionally, Albany notes that Wilco is the only jobber selling Albany's products in Louisiana. Finally, Albany concedes that in about February, 1966, its agent, Fritz, visited Terrebonne in Louisiana as a consultant on repairing the machinery in question.
Terrebonne answered interrogatories propounded by appellant admitting Terrebonne ordered an Albany Trimmer and head rig from Wilco of Memphis, Tennessee, on February 8, 1965, delivery thereof being received March 26, 1965. Terrebonne likewise observed that it understood Wilco to be a supplier of Albany Products.
In response to interrogatories propounded by plaintiff, Wilco stated that it functions as sales representative for manufacturers of woodworking machinery and, in such capacity, represents Albany. Wilco also related that the sale to Terrebonne was the only sale of Albany products in Louisiana, and that the equipment ordered from Albany is sent directly from Albany, Oregon to the purchaser. Additionally, Wilco acknowledged that on one occasion it displayed Albany's products at a Southern Pine Machinery and Equipment Show in Louisiana pursuant to an arrangement whereby Albany defrayed shipping costs and Wilco assumed the cost for personnel and display space. Wilco also stated that it solicits sales for Albany but that Albany services the equipment it sells.
Concerning Dorris, its Treasurer, Duncan K. Dorris, deposed that the speed reducer made by Dorris and incorporated into the trimmer was initially sold to the Alfred Halliday Company, Louisville, Kentucky.
Appellant maintains Louisiana has jurisdiction over Albany and Dorris by virtue of our "Long Arm Statute", LSA-R.S. 13:3201(b) and (d), and 13:3471(1):
LSA-R.S. 13:3201, in pertinent part, states:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
* * * * * *
(b) contracting to supply services or things in this state;
* * * * * *
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; or
* * *"
The official Comments of the Louisiana State Law Institute concerning the scope of Section 3201, above, notes the following:
"(a) R.S. 13:3201 through 13:3207 were adopted on the recommendation of the Louisiana State Law Institute to permit the courts of this state to tap the full potential of jurisdiction in personam *222 over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
* * * * * *
"(d) `Transacting business', as used in Subdivision (a), is a term which is much broader than `doing business' as defined by earlier Louisiana cases, and the phrase `does * * * business' of Subdivision (d) conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase `engaged in a business activity' of R.S. 13:3471(1)."
The applicable portion of LSA-R.S. 13:3471 states:
"The following rules supplement those governing the service of citation and other legal process in a civil action or proceeding contained in the Code of Civil Procedure:
(1) If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. If such employees or agents are no longer in the state, or cannot be found after diligent effort, the officer charged with the duty of making the service shall make his return to the court, stating the efforts made by him to secure service and the reason why he was unable to do so. Thereupon the court shall order that service shall be made on the secretary of state, or on some other individual in his office whom the secretary of state may designate to receive service of process. The secretary of state shall ascertain the domiciliary post office address of the corporation, and shall send the original papers served to the corporation by registered mail, with return receipt requested. The secretary of state shall retain in his office true copies of these papers, on which he shall note the date, the manner and other particulars of the service, and of the disposition made of the original papers. * * *"
The basic principle involved in resolving a jurisdictional question of the nature herein presented is satisfaction of the due process requirement of our state and federal constitutions. The landmark case of McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, involved a suit in California by a resident of that state against defendant, a Texas corporation, on a reinsurance certificate mailed to plaintiff from Texas. Plaintiff accepted the reinsurance plan and paid premiums thereon to defendant by mail addressed to defendant in Texas. Following the insured's death, his beneficiary submitted proof of death and upon defendant refusing to pay, the beneficiary instituted suit against defendant in California. The Supreme Court in McGee, above, concluded that defendant had never solicited or conducted any insurance business in California other than the policy sued on. In concluding that the California courts had jurisdiction of the action, the court in McGee noted that "it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." It appears the "minimum contacts rule" announced in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, involves a qualitative as well as quantitative analysis of defendant's business contacts with the forum state. Besides relying on the minimum contacts doctrine, the court in McGee, above, upheld California's assumption of jurisdiction because of (1) *223 California's manifest interest in providing effective means of redress for its residents against nonresident insurers refusing to pay claims; (2) the cost and inconvenience incurred by an insured compelled to seek remedy in a foreign forum, and (3) the fact that vital evidence was available in the forum of the insured.
Subsequently, in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, which involved an attempt by Florida to assume jurisdiction over a Delaware trust, the Supreme Court noted:
"The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail.
* * * * * *
"In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State. From Florida Mrs. Donner carried on several bits of trust administration that may be compared to the mailing of premiums in McGee. But the record discloses no instance in which the trustee performed any acts in Florida that bear the same relationship to the agreement as the solicitation in McGee.
* * * * * *
"The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Italics ours.)
We find the following especially significant language appearing in Hanson v. Denckla, above:
"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S. Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95."
The above quotation from Hanson v. Denckla, above, clearly indicates that notwithstanding the importance placed in McGee, above, on such factors as a state's manifest interest in the litigation, cost and inconvenience to plaintiff and availability of evidence in plaintiff's forum, nevertheless jurisdiction will not attach to the defendant unless the minimal contacts required by International Shoe Co. v. Washington, above, are present in each instance. It also appears that Hanson v. Denckla, above, stresses the importance of defendant initiating some contact with the forum state as a prerequisite to personal jurisdiction.
In an excellent article entitled Personal Jurisdiction of Nonresidents by the late Dean Henry G. McMahon, 35 Tul.L.Rev. 501, it is aptly noted that the minimum contacts rule established by International Shoe Company and McGee is equally as nebulous as the prior predicates of "power", "implied consent", "presence", and *224 "doing business", which are replaced thereby. We agree with this observation and also with the author's further conclusion that while International Shoe and McGee represent a liberal interpretation by the Supreme Court of the United States of the requirements of due process, the minimal contact rule does little toward establishing the ultimate limit of state jurisdiction in such instances with any degree of certainty. We readily concede the difficulty of application of the rule still exists.
Considering our own jurisprudence on the subject we find that in Wyss v. Good Hope Placers, Inc., La.App., 106 So.2d 10, jurisdiction of our courts over a foreign corporation was denied for the want of a showing that defendant had any contacts whatsoever in this state.
In Home Gas & Fuel Co., Inc. et al. v. Mississippi Tank Co., Inc., et al., La. App., 143 So.2d 641, jurisdiction was exercised over a Mississippi manufacturer of butane tanks in a suit by plaintiff to recover fire damage due to defendant's alleged defective manufacture of a tank purchased by plaintiff. In Home Gas, above, the evidence disclosed that defendant sold a number of systems in this state; that at least four different sales representatives of defendant solicited sales in Louisiana, and that the allegedly defective tank was purchased from defendant pursuant to a telephone call from Louisiana to Hattiesburg, Mississippi. The court found that defendant had consistently engaged in a business activity in Louisiana over a period of years, and rejected the ruling of the trial court to the effect that our long-arm statute is limited to a proceeding on a cause of action directly resulting from a business activity conducted in Louisiana. The court then expressly held that where defendant has actively engaged in business in this state over a long period of time, the cause of action sued upon need not have arisen as the result of a direct solicitation by defendant in order that our courts exercise jurisdiction over an alien defendant.
In Universal Carloading & Distributing Co., Inc. v. Saia Motor Freight Line, Inc., La.App., 156 So. 2d 608, suit was instituted against a Pennsylvania corporation not licensed to do business in this state, to recover damages for goods shipped from New York to Patterson, Louisiana. Defendant had neither registered agent nor rail trackage in Louisiana, but did have an office in this state which solicited business for its lines outside Louisiana. The shipment of goods in question was not solicited by or through defendant's Louisiana office but was routed by defendant over part of defendant's trackage outside of this state. The court in Universal Carloading, above, held that defendant's participation in the subject multi-carrier interstate shipment, and "any breach of its contractual or statutory duties, took place entirely outside of Louisiana, and Louisiana courts have no jurisdiction to entertain a claim for any damages resulting from any such breach of duty. W. H. Hodges & Co. v. Pennsylvania R. Co., 171 La. 699, 132 So. 115."
Covington v. Southern Specialty Sales Company, Inc. et al., La.App., 158 So.2d 79, held an Iowa manufacturer of gasoline engines amenable to Louisiana jurisdiction. The facts were that Clinton Engine Corporation, an Iowa concern, manufactured an engine which was incorporated into a lawnmower. Plaintiff, employee of a lawnmower retailer, was injured when struck on the leg by the pull rope of a mower which became fouled. Clinton's engines were sold in Louisiana through a distributor, who in turn had established some 140 independent operators who sold and serviced Clinton's products pursuant to contracts with Clinton's distributor. It further appeared that Clinton's Dallas, Texas sales and service district manager called upon the Louisiana distributor at four to five week intervals to assist the distributor. He also called upon the numerous sales and service operators and upon original equipment manufacturers who had no contractual relations with the distributor. Even though it did not appear *225 that the engine in question was sold in Louisiana as the direct result of the activities of Clinton's sales representative, it was held, in effect, that Clinton was doing business in the state through its distributor and the numerous sales and service outlets which handled Clinton's products.
Covington, above, was followed in Nigro v. Cessna Aircraft Company, La.App., 169 So.2d 594, which held an alien manufacturer of aircraft subject to our jurisdiction upon finding that the defendant operated in Louisiana substantially similar to the manner employed by Clinton Engine Corporation in Covington, above.
Fidelity Credit Company v. Bradford, La.App., 177 So.2d 635, involved an action alleging fraud and the sale of allegedly defective equipment. A third party demand was made therein against a foreign corporation which had never qualified or been authorized to do business in this state, and which neither employed any personnel in Louisiana nor had any salesman, office or representative in this state. In Fidelity Credit Company, above, the court noted the operative jurisdictional factors set forth in International Shoe Company, above, but found that International Shoe Company, above, and numerous other authorities cited and relied upon by plaintiff, were distinguishable. The court declined to exercise jurisdiction over an Oklahoma manufacturer who shipped a vacuum cleaner into the state upon order of its independent distributor.
Terasse v. Wisconsin Feeder Pig Marketing Coop., La.App., 202 So.2d 330, sustained jurisdiction over a Wisconsin corporation who sold dairy cows through a resident commission salesman. The court found it sufficient that defendant accepted and made shipment pursuant to a contract by a resident individual who represented defendant in some fashion whether it be salesman, commission agent or broker. In so holding, the court in Terasse expressly relied on the operative factors cited in McGee, above, namely, the manifest interest of the state in providing its citizens an effective means of redress and the economic disadvantage in compelling plaintiff to litigate in an alien forum.
Jurisdiction was denied in Bowlero, Inc. et al. v. Allen, La.App., 205 So.2d 196, over defendant who merely sent demand letters from Texas in connection with certain certificates of indebtedness. In Allen, above, the court noted that LSA-R.S. 13:3201 provides that transaction of any business in this state can constitute valid basis for exercise of jurisdiction provided, pursuant to LSA-R.S. 13:3202, the cause of action arises from business transacted in this state. In reaching its conclusion, the Court in Allen, above, cited and relied upon the holding in Hanson v. Denckla, above, to the effect that in each such instance defendant must, by some act, purposefully avail itself of conducting business within the forum state, thus invoking the benefits and protections of its laws.
A Mississippi dealer in thoroughbred horses was held subject to our jurisdiction in an action to annul the sale of a thoroughbred mare for alleged redhibitory defects in Aucoin v. Hanson, La.App., 207 So.2d 834. Defendant in Aucoin owned no horses or other property in Louisiana; he was a member of the Louisiana Thoroughbred Breeders Association; he had previously purchased horses in this state; he was licensed to and frequently raced horses at two tracks situated in this state. Plaintiff, in Aucoin, negotiated for the sale of a mare with Guillory, a Louisiana resident, who represented himself as defendant's former trainer. Guillory contacted defendant; plaintiff telephoned defendant, and a sale was consummated with delivery being made to plaintiff in Mississippi. On appeal, the court in Aucoin affirmed the trial court's finding that defendant conducted business in the state sufficient to subject him to the provisions of LSA-R.S. 13:3201 (a). The appellate court also found that Guillory acted as defendant's agent and noted two significant factors, namely, that preliminary negotiations leading *226 to the sale transpired in Louisiana, and final payment by plaintiff was mailed from this state. The court, citing Home Gas and Fuel Co. v. Mississippi Tank Co., La. App., 143 So.2d 641, held that our longarm statute does not require that the transaction creating the cause of action sued on be a direct and immediate result of defendant's business transactions in this state, but only requires that defendant's prior business activities be related to and of the same general nature as the incident out of which plaintiff's cause of action arises.
Jurisdiction over a Minnesota manufacturer of power mowers was declined in Stelly v. Quick Manufacturing, Inc. et al., La.App., 228 So.2d 548, when it was shown that defendant had no place of business, agent or representative in Louisiana; that defendant sold only through salesmen to independent distributors and had no distributor in Louisiana; that defendant occasionally shipped directly to Louisiana upon orders from distributors, and that defendant never sent a bill to anyone in Louisiana and never received a payment from a Louisiana resident. In Stelly, above, the court rejected plaintiff's contention that the manufacture of defendant's products for sale throughout the country, coupled with defendant's shipments of products directly into the state, satisfied the "minimum contacts" requirement indispensable to do process in such instances.
This case presents the question whether a single previous display of Albany's products in Louisiana; a sale confected between plaintiff's employer and Albany's agent, Wilco, a foreign corporation; a direct shipment to plaintiff's Louisiana employer, and servicing of the product in Louisiana by Albany's employee, are quantitatively and qualitatively sufficient to satisfy the minimum contact requirement needed to sustain personal jurisdiction over Albany.
Plaintiff, relying on Terasse v. Wisconsin Feeder Pig Marketing Coop., above, and Aucoin v. Hanson, above, urges that the minimum contact requirement is fulfilled. We find both authorities distinguishable in that in each instance a Louisiana resident acted in this state on behalf of a nonresident defendant. In Terasse, above, it is clear that defendant purposefully solicited the sale giving rise to the litigation. In Aucoin, although it does not expressly appear that defendant's agent purposefully solicited the sale resulting in the action, it does appear that defendant conducted substantial similar business in Louisiana. Home Gas, above, also sanctions the acceptance of jurisdiction even though the subject transaction did not result from direct solicitation, provided defendant engaged in a substantial number of similar transactions in the forum state.
The instant case does not disclose whether Terrebonne initially contacted Wilco with reference to the purchase, or vice versa. Such a distinction appears vital in view of Hanson, above, which emphasizes that purposeful activity on the part of defendant or defendant's agent is fundamental in determining jurisdiction in cases of this nature. Plaintiff must establish facts which justify our assumption of jurisdiction. Plaintiff has shown only that Wilco, as agent of Albany, solicits sales generally in the South for Albany. No showing is made that Albany's agent solicited the sale in question. We find, therefore, that plaintiff has failed to demonstrate "purposeful activity" on Albany's part which is indispensable for assumption of jurisdiction. Moreover, plaintiff has not established that Albany has conducted substantially similar business in Louisiana which was deemed sufficient for jurisdictional purposes in Aucoin and Home Gas.
Pertinent here is the holding in Stelly, above, that direct shipment of products to this state as part of a nationwide sales program does not, per se, constitute minimum contacts sufficient to invoke LSA-R.S. 13:3201(b), which admits of jurisdiction when goods are contracted to be sold here. Also, plaintiff cannot rely on either Covington, above, or Nigro, above, each of *227 which involved business operations in this state on a volume basis sufficient to constitute doing business in the ordinary sense of the term.
Granting that Section 3201, et seq., above, encompasses the full potential permitted by McGee and International Shoe, above, we find that plaintiff has failed to show minimum contacts on Albany's part sufficient to bring this action under 3201 (b), above, which admits of jurisdiction when defendant has contracted to supply things in Louisiana.
LSA-R.S. 13:3201(c) and (d) provide that our courts may exercise jurisdiction over a non-resident who acts directly or by an agent, as to a cause of action arising from the alien's causing injury or damage by an offense or quasi offense committed through an act of omission in this state (c), or causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state (d). Construed together, these provisions unquestionably contemplate a situation wherein a tort consists of the negligent manufacture of a product in a foreign state. Subsection (d), above, clearly provides for such a contingency. A more stringment minimum contact test is provided when the tort occurs on foreign soil than when it happens in Louisiana. When the tort occurs outside the state, the statute requires in addition that defendant either regularly conduct or solicit business in the state, or engage in some other persistent course of conduct in the state, or derive substantial revenue from goods used or consumed or services rendered in the state. Here it appears that Albany has displayed its machinery in Louisiana on only one occasion. Subject sale is the only instance of a sale of Albany's products in this state. Such limited activity here does not place Albany within the ambit of LSA-R.S. 13:3201(d).
The record discloses that Dorris sold its speed reducer to a Kentucky corporation. The reducer subsequently became a component of the trimmer fabricated by Albany in Oregon and shipped into Louisiana. No other contact by Dorris with Louisiana was either alleged or proven. Obviously, Dorris did not contract to sell its product in Louisiana as envisioned in LSA-R.S. 13:3201(b). Nor did Dorris have any contacts with Louisiana which would bring it within the purview of LSA-R.S. 13:3201(d).
Plaintiff urges our exercise of jurisdiction over Dorris on authority of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761, which, in effect, exercised jurisdiction over a foreign corporation on the "stream of commerce principle". In Gray, plaintiff, a citizen of Illinois, was injured by an exploding water heater. Titan Valve Manufacturing Company, an Ohio corporation was made defendant. Titan sold valves to American Radiator, a Pennsylvania corporation, which installed one of the valves in a water heater which American sold in Illinois. Under Illinois law, a nonresident, who either in person or through an agent commits a tort within the state, submits to Illinois jurisdiction. The Illinois court held that a tort occurs at the place of happening of the last event necessary to render the tort-feasor liable. The court also ruled that this last event occurred in Illinois where the heater exploded, consequently the tort committed by Titan occurred in Illinois. Admittedly, Titan did no business in Illinois and had no agent there. Titan's only contact with Illinois was found to be that its product, manufactured in Ohio, was incorporated into a water heater in Pennsylvania, which heater was sold in the course of commerce to a purchaser in Illinois. The court in Gray, above, held that the dominant inquiry, in determining whether due process was satisfied, is whether defendant engaged in some *228 act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum. The court then presumed that water heaters of the type involved would be used in substantial numbers in Illinois. On this assumption, the court concluded Titan was amenable to its jurisdiction because Illinois law protected Titan in the marketing of water heaters containing its valves. In assuming jurisdiction, the court noted:
"Where the illegal liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State."
The scope of our statutes appears to preclude an application similar to Gray, above. To hold that the negligent manufacture of a product in a foreign state constitutes a tort in our own jurisdiction would render Section 3201(d) of our own act virtually meaningless. It would appear that Subsection (d) was meant to expressly cover a situation where a product negligently manufactured in another state causes injury to a person in this state, because Subsection (c) explicitly covers an offense or quasi offense committed through an act or omission in this state.
Meaning should be given, if possible, to every section of a statute; no portion of a law should be so construed as to render another inoperative. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336.
It is noteworthy that Official Revision Comment (b) under LSA-R.S. 13:3201, et seq. indicates that the statute is based in part on Illinois Stat.Ann. c. 110, § 17 (Smith-Hurd 1961). It is reasonable to conclude that the redactors of our own statute (adopted in 1964) were aware of Gray, above, which was decided in 1961, and other similar authorities, but opted to enact our own Subsections (c) and (d), the latter of which specifies which minimum contacts will satisfy due process where a tort results from an act or omission committed outside the state. Since Dorris has not been shown to meet any of the specified contacts required by our Subsection (d), it is not amenable to our jurisdiction. Our holding in this respect accords with Stelly, above, which rejected the stream of commerce theory. We note that we are in agreement with the views expressed in Stelly, above. Even should the rule in Gray, above, obtain here, the result would not be changed. Nothing in the case at hand justifies the assumption that Dorris contemplated volume sales of Albany's saws in this state.
Appellant contends the lower court erred in granting Wagner's motion for summary judgment in failing to apply LSA-C.C.P. art. 966, and the jurisprudence applicable herein, and failing to conclude that the pleadings established genuine issues as to material facts.
In support of its motion for summary judgment, Wagner filed an affidavit by its employee, J. P. McGraughran, an electrical engineer. In essence the affidavit states that affiant inspected the electrical motor following the accident and determined that it had never malfunctioned, that it had never been worked on, and there was no procedure whereby it could have malfunctioned. He also stated the motor showed no evidence of repair, and had it ever malfunctioned, it could not have returned to its original condition without repair. He explained that the motor is a constant speed motor having a constant power output. He also explained that the constant output of the motor is subject to control devices which also control the action of the saw blades and conveying apparatus, and which control devices are neither manufactured, sold, installed or otherwise dealt with by Wagner. Plaintiff offered no counter affidavit.
By stipulation between counsel for plaintiff and Wagner, the deposition of T. B. *229 Lawrason, Jr., plant manager of the sawmill in which the trimmer was installed, was offered as part of the record on which the trial court decided Wagner's motion for summary judgment. Lawrason explained in detail the working of the trimmer. As regards Wagner's motor, he stated, in effect, that he had never known the motor to malfunction, and that following the accident no repairs were made to the motor.
It is well settled that a motion for summary judgment is not to be used as a substitute for trial. Glass v. Vista Shores Club, La.App., 221 So.2d 304. If there is any doubt concerning an absence of dispute as to a material fact, a motion for summary judgment must be denied and the matter resolved in favor of trial on the merits. Henderson v. Falgout et al., La.App., 188 So.2d 208. However, LSA-C.C.P. art. 967 expressly provides that where a motion for summary judgment is supported by affidavit, the adverse party may not rest on the mere allegations or denials in his pleadings but must respond, by affidavit or as otherwise provided in LSA-C.C.P. art. 966, and if he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In this instance, the McGraughran affidavit and Lawrason deposition indicate that without question there was no malfunctioning of Wagner's motor. Appellant made no response thereto by affidavit, deposition or otherwise. In the absence of counter affidavits or other offsetting offerings, it is assumed that no dispute exists with respect to the facts set forth in movant's affidavits. The trial court properly sustained Wagner's motion for summary judgment in both actions.
Appellant alternatively alleges the trial court erroneously rejected her motion for a new trial in order to permit introduction of subsequently obtained additional evidence regarding the business activities of Albany and Dorris within this state.
The application was obviously premised on LSA-C.C.P. art. 1972(2) which provides that a new trial shall be granted when applicant therefor has subsequently discovered evidence important to his cause, which he could not, with due diligence, have obtained before or during the trial.
The accident in question occurred September 29, 1965. Albany's and Dorris' exceptions were heard April 13, 1967, approximately one year and seven months later. Judgment was rendered thereon October 13, 1967. Appellant's application for rehearing was filed December 14, 1967, and urged as new evidence the deposition of Lawrason taken August 30, 1967, in suit Number 4608; a freight bill dated April 6, 1965, of which appellant became aware on a date not specified, and answers filed by Wilco on September 26, 1967 to supplemental interrogatories propounded by plaintiff on a date not indicated in the record. It is significant that plaintiff's application for rehearing does not allege that the purported new evidence could not have been sooner discovered by the exercise of due diligence. No explanation appears of record why the evidence in question could not have been discovered by the exercise of due diligence in the more than 18 months which elapsed between the time plaintiff's action was filed and defendants' exceptions tried. Under the circumstances, the trial court properly denied appellant's motion for new trial.
Wagner Electric Corporation answered plaintiff's appeal asserting a right to damages for frivolous appeal. Johnson v. Iowa Rice Dryer, Inc., La.App., 226 So. 2d 194, stated with regard to damages for a frivolous appeal: "Damages for frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious." *230 This court cannot find either that subject appeal was filed solely for the purposes of delay or that counsel for plaintiff was insincere in the view of the law he advocated. Because this court finds no merit in plaintiff's appeal as against Wagner is not sufficient to justify an award of damages for frivolous appeal in absence of an affirmative showing or an overwhelming fact situation to the effect that such award is warranted. Defendant Wagner has not sustained his burden of proof.
The judgments appealed by plaintiff are affirmed at plaintiff's cost.
Affirmed.