300 So.2d 590 (1974)
Bosia WARDEN and his wife Evie Lois Warden, Plaintiffs-Appellants,
v.
SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION et al., Defendants-Appellees.
No. 4648.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
Peter A. Ciambotti, Lake Charles, for plaintiffs-appellants.
Douglas L. Irish, Lewis & Roca, Phoenix, Ariz., Davidson, Meaux, Onebane & Donohoe by Richard C. Meaux, Lafayette, Brame, Bergstedt & Brame by Frank M. Brame, Plauché, Smith & Hebert by Andrew L. Plauché, Jr., II, Lake Charles, for defendants-appellees.
Before FRUGÉ, CULPEPPER and WATSON, JJ.
WATSON, Judge.
Plaintiff, Evie Lois Warden, contracted a serious hepatitis infection; she and her husband, Bosia Warden, filed this suit to recover damages from defendants, alleging that her hepatitis was serum hepatitis resulting from blood transfusions she received either between October 31 and November 16, 1970, at St. Patrick's Hospital or between November 20th and November *591 29, 1970, at Memorial Hospital, both in Lake Charles, Louisiana. Made defendants were Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital; its insurer, Fidelity and Casualty Company of New York; Sisters of Charity of the Incarnate Word of the Diocese of Galveston, d/b/a St. Patrick's Hospital; their insurer, Argonaut Southwest Insurance Company; Blood Services of Texas; and Blood Services.
Plaintiffs' suit pleads three alternative legal theories: (1) implied warranty; (2) strict liability; and (3) negligence.
Defendants all filed motions for summary judgment, and there was a hearing on these motions on September 13, 1973. The trial court granted defendants' motions for summary judgment. Plaintiffs have appealed.
The facts concerning the hospitalization of Mrs. Warden and her blood transfusions with their alleged consequences are as follows:
Plaintiffs' petition alleges that plaintiff, Evie Lois Warden, was admitted to St. Patrick's Hospital on October 31, 1970; that she received blood transfusions on November 4, 1970, and on November 11, 1970, the blood being purchased by plaintiffs from St. Patrick's Hospital. She was released from St. Patrick's on November 16, 1970; commenced hemorrhaging; and was admitted to Lake Charles Memorial Hospital on or about November 20, 1970. She remained there until November 29, 1970, and, during her hospitalization, she received blood transfusions. On January 23, 1971, she was taken to the emergency room of St. Patrick's Hospital and, after a critical period, recovered. She returned home on February 6, 1971. Her condition at the time of this third hospitalization was diagnosed provisionally by her physician, Dr. Lacour, as "post-transfusion hepatitis" (TR. 8.) Mrs. Warden is alleged to have sustained permanent damage to her liver, requiring medical attention and medication for the rest of her life. She asked damages of $150,000.00. Her husband, as head and master of the community, asked damages for her medical bills, hospital expenses, drug expenses, loss of services and mental anguish and distress for a total of $75,000. Plaintiffs filed suit in forma pauperis.
The Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital, and its insurer, Fidelity and Casualty Company of New York, filed a peremptory exception of no cause and no right of action as to Bosia Warden's claim for mental anguish and loss of services. This exception was heard with the motions for summary judgment but was not decided due to the trial court's granting of the motions for summary judgment.
In answer to interrogatories propounded by defendants, Blood Services and Blood Services of Texas, to plaintiffs in regard to Mrs. Warden's course of treatment, plaintiffs answered as follows:
"Moffett & Tuckerdid not tie main arteries properly. Started hemorrhaging day after released (Nov 20, 1970) Admitted to Memorial on 20th. Had blood transfusion. Had emergency surgery on Nov. 21, 1970. Had check-ups with Moffett and Tucker. Went in to see Moffett with swelling and fever. He referred me to Stubblefield, dermatologist. Stubblefield said it was her nerves. Same day she was brought in unconscious to St. Patrick's. Dr. Moffett and Dr. Tucker refused to admit her, so Dr. McCann admitted her. Dr. Lacour took over (family doctor). Dr. McCann and Dr. Lacour diagnosed her case as post transfusion hepatitis. Regular visits were made to Dr. Lacour." (TR. 99)
Filed with the motion for summary judgment on behalf of Blood Services and Blood Services of Texas was the affidavit of John B. Alsever, M.D., who stated that he was vice-president for medical affairs of Blood Services; that infectious hepatitis and serum hepatitis are clinically indistinguishable; that the incubation period *592 for serum hepatitis may be as long as 182 days; and that, at the time of this patient's transfusions, medical knowledge was such that the blood was not capable of being made entirely safe for transfusion.
Only the procedures used by Blood Services are stated to be from affiant's "personal knowledge" (TR. 127). That portion of the affidavit not based on personal knowledge by the doctor should not have been considered by the trial court in deciding the motions for summary judgment. LSA-C.C.P. art. 967;[1] Hidalgo v. General Fire & Casualty Company, 254 So.2d 493 (La.App. 3 Cir. 1971).
Attached to this doctor's deposition were copies of the bag label and official package circular used by Blood Services, the bag label reading as follows:
"WARNING: Whole blood may transmit certain diseases, such as viral hepatitis, for the presence of which no laboratory tests are available. Because of this fact, human blood is delivered without any warranty, whether of merchantability, fitness or otherwise, extending beyond the description on this label." (Exhibit A-1; TR. 128)
Attached to this deposition as Exhibit B are the texts of laws relating to blood transfusions, warranty and strict liability from various jurisdictions.
Blood Services also introduced the affidavit of W. Quinn Jordan (Exhibit C; TR. 146), president of Blood Services; this exhibit goes into the financing and operation of Blood Services. Another affidavit by Mr. Jordan, Exhibit D, concerns the charter and articles of incorporation of Blood Services.
Exhibit E is an affidavit by Dr. Alsever which states that all employees of Blood Services of Texas are selected and retained with due care. The articles of incorporation of Blood Services of Texas, its by-laws and certificate of incorporation are also in evidence. Both Blood Services and Blood Services of Texas are non-profit charitable corporations. The defense of charitable immunity has been abolished in Louisiana. Consideration of this point is unnecessary. The trial court stated correctly that charitable immunity was not to be considered. Garlington v. Kingsley, 289 So.2d 88 (La., 1974); Jackson v. Doe, 296 So.2d 323 (La., 1974); Connor v. Methodist Hospital, 297 So.2d 660 (La., 1974).
Mrs. Warden stated in her deposition that Dr. McCann, now deceased, told her that she had serum hepatitis during her third hospitalization. Mrs. Warden also *593 stated that no other member of her family had hepatitis and that she had been told by Dr. Lacour that the type of hepatitis she had was not contagious and could only be transmitted through blood contact. Mrs. Warden also testified that Dr. Lacour stated that he agreed with Dr. McCann's diagnosis of serum hepatitis.
The deposition of Dr. Fritz Anthony Lacour, Sr. (Tr. 426) was introduced in evidence. He said he had been engaged in the general practice of medicine in Lake Charles for about twenty years and had treated Mrs. Warden for a period of between three and five years. He admitted her to Lake Charles Memorial Hospital on November 1, 1970, and she had surgery by Dr. Tucker on November 3, 1970. He next saw Mrs. Warden on December 11, 1970. He stated that she was hospitalized on January 24, 1971, by Dr. McCann and he saw her when he returned to the city. This doctor stated that he diagnosed Mrs. Warden as having hepatitis of unknown origin.
It was pointed out that his statement that his provisional as well as final diagnosis was "hepatitis, cause unknown...." (TR. 436) was contradicted by the record of St. Patrick's Hospital which stated "Provisional diagnosis, post-transfusion hepatitis" (TR. 461). Dr. Lacour then stated that he could not get pathologists to confirm his diagnosis of post-transfusion hepatitis. He also stated in answer to the following question
"Question: I want to know whether in your medical opinion you can state whether or not it is more probable than not that she contracted this hepatitis from the blood that she received?
"Answer: .... I have to tell you that that was the first thought I had, and I think 99 out of a hundred doctors under the circumstances would have had that thought." (TR. 470)
The deposition of Dr. Andrew Ranier, a specialist in the field of pathology, was taken on behalf of defendants. He stated that he was director of laboratories for St. Patrick's Hospital and that St. Patrick's maintains a blood bank in the hospital, receiving most of its blood from Blood Services. Dr. Ranier said that the viruses causing serum hepatitis and epidemic hepatitis are indistinguishable in the laboratory. However, he stated that some doctors have the opinion that on clinical information they can distinguish the two types of hepatitis. (TR. 513-515) It is known that immunity to one does not give immunity to the other. He stated that he had never seen Mrs. Warden personally but that his office had done tests for her at her physician's request.
Dr. Avery L. Cook, a specialist in pathology, testified by deposition that he is director of the Department of Pathology at Lake Charles Memorial Hospital and that the blood bank there is operated under his supervision. Dr. Cook stated that, from an objective standpoint, it is impossible to distinguish medically between serum hepatitis and infectious hepatitis. However, a clinical distinction is often made by a treating physician. He stated that he did not believe it was customary for physicians to warn patients about the dangers of transfusions. Dr. Cook apparently did not see or perform tests for Mrs. Warden. His opinion may be subject to the same objection for purposes of summary judgment as a portion of Dr. Alsever's. Hidalgo v. General Fire and Casualty Company, supra.
Issue of Material Fact
The trial court concluded that Dr. Lacour satisfactorily explained the discrepancy between his provisional and final diagnosis of Mrs. Warden. However, our reading of Dr. Lacour's deposition, Mrs. Warden's, and that of Dr. Ranier leads us to the conclusion that there is a material issue of fact as to the nature and cause of plaintiff's hepatitis.
*594 Summary judgment may be granted only as provided by LSA-C.C.P. art. 966, which reads as follows:
Art. 966. Motion for summary judgment; procedure
The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. As amended Acts 1966, No. 36, § 1.
The test as to the presence of an issue of fact has been stated recently by the Louisiana Supreme Court in the often-cited case of Odom v. Hooper, 273 So.2d 510 (La.1973):
"All doubt concerning dispute as to a material issue of fact must be resolved against granting the motion for summary judgment and in favor of trial on the merits. Carney v. Hartford Accident & Indemnity Co., La.App., 250 So.2d 776, 779 (1971). It is well settled that a motion for summary judgment is not to be used as a substitute for trial. If there is any doubt concerning an absence of dispute as to a material fact, a motion for summary judgment must be denied and the matter resolved in favor of trial on the merits. Fisher v. Albany Machine & Supply Co., La.App., 246 So.2d 218, 229 (1971), 261 La. 747, 260 So.2d 691." 273 So.2d 515.
The Supreme Court's phrase is "any doubt" as to the absence of a factual dispute. We find a factual dispute; we certainly cannot say there is no factual dispute beyond "any doubt". There is some evidence, although it is sparse, on plaintiffs' side of the issue of causation. Defendants' evidence, as revealed by the present record, is stronger. Nevertheless, the factual issue of cause of the disease is present and there is at least some evidence on both sides. The fact that a litigant is unlikely to prevail on the merits; that there is little or no likelihood of successful prosecution; or that a trial judge has grave doubt that a case can be proved by a preponderance of the evidence is not sufficient to sustain a motion for summary judgment. Leger v. Southern Farm Bureau Casualty Ins. Co., 251 So.2d 801 (La. App. 3 Cir. 1971); Snipes v. Southern Baptist Hospital, 243 So.2d 298 (La.App. 4 Cir. 1971). The burden of proof at a hearing on a motion for summary judgment is upon those making the motion to prove that there is no genuine issue of fact. At the hearing in this case, it was not incumbent on plaintiffs to prove their case but merely to show that there was a disputed material fact.
Plaintiffs allege in their petition that defendants were negligent in sixteen particulars. There is no question that at least some of the charges of negligence state a cause of action under the first paragraph of LSA-C.C. art. 2315:
Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
and under LSA-C.C. art. 2316:
Art. 2316. Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
We note that defendants cite cases such as Rhodes v. Max Factor, Inc., 264 So.2d 263 (La.App. 4 Cir. 1972) where the Fourth Circuit affirmed the trial court's *595 holding that failure to prove causation was fatal to plaintiff's claim against a hair preparation manufacturer. The case certainly stands for the proposition that causation must be proved, but significant to the issues before us is the fact that the case was tried on the merits; it was not a summary judgment. The issue of causation was decided only after a full hearing.
While plaintiffs in the present litigation may have a difficult case, they are entitled to their day in court at least on the negligence theory. Compare Hoder v. Sayet, 196 So.2d 205 (Fla.App.1967) and Carter v. Inter-Faith Hospital of Queens, 60 Misc.2d 733, 304 N.Y.S.2d 97 (1969).
Having concluded that the issue of fact as to causation of the hepatitis is disputed and that this issue is material to plaintiffs' claims under their negligence theory, we pretermit any consideration of the implied warranty theory or the strict liability theory.
For the foregoing reasons, the judgment of the trial court dismissing plaintiffs' suit at their costs is reversed and remanded for trial on plaintiffs' claims. All costs to await final disposition.
Reversed and remanded.
NOTES
[1] Art. 967. Same; affidavits

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
If it appears to the satisfaction of the court at any time that any of the affidavits presented pursuant to this article are presented in bad faith or solely for the purposes of delay, the court immediately shall order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees. Any offending party or attorney may be adjudged guilty of contempt. As amended Acts 1966, No. 36, § 1.