252 So.2d 467 (1971)
Mrs. Barbara Dennis BOYKIN et al.
v.
A. B. LINDENKRANAR et al.
No. 4539.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
Rehearing Denied October 6, 1971.
Writ Refused December 2, 1971.
Chaffe, McCall, Phillips, Burke, Toler & Sarpy, Harry McCall, Jr., New Orleans, for defendant-relator.
*468 Steven R. Plotkin, Owen J. Bradley, New Orleans, for plaintiff-respondent.
Before REDMANN, LEMMON and STOULIG, JJ.
REDMANN, Judge.
We granted certiorari to review the trial court's overruling of declinatory exceptions to the service of process and to the jurisdiction filed by relator, a Swedish corporation which claims to be unamenable to the jurisdiction of Louisiana courts, and not to have been properly served in any case.

Service of Process
Relator was sued as the manufacturer of a building crane, while working on which plaintiff's decedent met his death. Jurisdiction over relator was asserted under a longarm statute, LSA-R.S. 13:3201-7.
R.S. 13:3204 provides that a certified copy of citation and petition "shall be sent by counsel for the plaintiff to the defendant by registered or certified mail, or actually delivered to the defendant * * *."
It appears to us that this provision for service of process is mandatory. We note § 3205 prevents a default judgment without proof of the service required by § 3204; thus, in the absence of service, defendant could simply ignore this lawsuit with impunity.
Plaintiff concedes she has not effected service as required, but instead attempted service through the Secretary of State (also without compliance with R.S. 13:3471, although compliance would not have met the requirements of R.S. 13:3204).
We are satisfied the exception to the service of process should have been maintained (although we presume that in the trial court, as in argument here, the parties emphasized the jurisdiction argument).
The failure to have mailed documents to defendant in compliance with R.S. 13:3204 could easily be remedied, and thus C.C.P. art. 932 would authorize an order allowing plaintiff to cure this defect.
However, defendant's argument is that even if the mail-service requirement of R.S. 13:3204 were met, such service is only authorized "in a suit under R.S. 13:3201", and that, since § 3201 does not confer jurisdiction under the circumstances here, such service is not authorized by our statute.
We believe it would serve no purpose to avoid, on grounds of lack of service, this issue which is essentially a plea to the jurisdiction of the court; and we believe the proper resolution of the question raised by C.C.P. art. 932 (whether suit ought to be dismissed or plaintiff allowed to remedy the defect) reasonably requires us to determine jurisdiction.

Jurisdiction
Plaintiff claims Louisiana has asserted jurisdiction over defendant by R.S. 13:3201, subd. (d):
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause arising from the nonresident's
* * * * * *
"(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; * * *."
Plaintiff's petition alleges relator manufactured the crane in Sweden with defects in it which foreseeably caused the death of plaintiff's decedent in Louisiana.
We find deposition evidence in the record that there were several large construction *469 cranes in New Orleans manufactured by relator costing about $50,000 each. Nine were specified, and the possibility of others is alluded to. The statement is made, by the Louisiana representative of a U. S. corporation which markets relator's cranes, that "most" of the large building cranes used in construction in New Orleans are manufactured by relator.
But relator claims non-inclusion under R.S. 13:3201(d) because of the circumstance that it does not sell cranes in the United States nor here maintain offices or agents; nor has it ever been authorized to do business in any of the United States. It seems fair to say that the principal (and almost the only) evidence of a connection between relator and Louisiana is that relator's cranes do reach Louisiana, in numbers amounting to more than an isolated instance or two, through what relator describes as sales in Sweden to a United States corporate entity ("Heede," otherwise unrelated to relator), which has the exclusive right to buy relator's cranes and parts for export to the United States. Relator's interrogatory statements are that it has no knowledge of what happens to its cranes after it sells them to Heede in Sweden and ships them at Heede's risk to the United States.
Relator argues this case is similar to Stelly v. Quick Mfg., Inc., 228 So.2d 548 (La.App.1969), and Fidelity Credit Co. v. Bradford, 177 So.2d 635 (La.App.1965), cert. denied, 248 La. 430, 179 So.2d 273.
In Stelly, plaintiff, claiming that defective foreign manufacture of a lawnmower caused him personal injury in Louisiana, filed suit against the manufacturer, Quick Mfg., Inc. Many months passed during which plaintiff experienced problems in obtaining proper service of process on Quick. Thereafter plaintiff sought to join a second foreign corporation, Toro Mfg. Corp., alleging it had acquired the assets and assumed the liabilities of Quick.
Toro's operations are similar to those of our relator, with sales only to an independent distributor. If Toro's alleged liability was for injury resulting from a lawnmower defectively manufactured by Toro, the case would be quite similar to ours. But Toro was sought to be held for injury allegedly caused by a mower made by Quick, whose liability (but not personality) it had assumed. Thus the action against Toro did not arise from Toro's "causing injury" within R.S. 13:3201(d), regardless of whether Toro's operations might otherwise have met the tests of § 3201(d). So Stelly's dismissal of Toro for lack of jurisdiction is not authority for dismissing our relator.
Bradford was a suit on a note given in connection with an agreement for installing a central home vacuum cleaning system. The agreement also included the purchase of "securities" under which defendants could recoup their cost by providing names of others who would purchase. Claiming breach of contract and defective equipment (and fraud in obtaining a mortgage) defendants third-partied (among others) the central unit's manufacturer. It appears the only real ground for joining the manufacturer was the claim that the unit was defective. Thus Bradford does not appear to be a tort claim against the manufacturer, and would not be authority for construing R.S. 13:3201(d).
Relator also cites another tort suit, Fisher v. Albany Machine & Supply Co., 246 So.2d 218 (La.App.1971). Certiorari has been granted, 258 La. 905, 248 So.2d 332, and we think it unnecessary to discuss that case in detail. It may be said that our relator's position is somewhat similar to that of Albany, which sold sawmill equipment in Louisiana only through an independent jobber. There was apparently no direct evidence of any sale by the jobber in Louisiana except that of the saw Fisher claimed injured him because of defective manufacture. If the inference can be justified that Albany sawmill equipment reached Louisiana in substantial amount in more than one or another isolated instance, we would have held Albany, as we hold *470 our relator, amenable to Louisiana's jurisdiction under R.S. 13:3201(d) on that basis.
It appears to us that a manufacturer, whose products reach Louisiana in quantity that may reasonably be said to be substantial, is somehow successfully soliciting and doing business in Louisiana, for purposes of determining whether under R. S. 13:3201(d) he subjects himself to Louisiana's jurisdiction over a tort claim arising out of allegedly defective manufacture of his product outside of Louisiana.
We do not suggest these circumstances would confer jurisidiction under R.S. 13:3201(a) or (b), since the cause of action does not arise out of the "transacting" of business in the state nor "contracting" to supply products in this state. Nor do we rule on whether relator by its connection with Louisiana "derives substantial revenue from goods used or consumed" in Louisiana, R.S. 13:3201(d), although we doubt the revenue must be received from the use (or consumption) of the goods as relator argues.
In our opinion the intended breadth of R.S. 13:3201(d), for purposes of conferring jurisdiction in manufacturer's products liability cases, is not limited by traditional notions of contract privity; nor, for such purposes, is "independent contractor" as opposed to "agent" a defense to jurisdiction. These concepts have application where the cause of action arises out of a contract with, or the actions of, the independent contractor, for which the manufacturer would not even have liability. But where the independent contractor's only relation to the cause of action and to the jurisdiction is that it has served as the regular means of placing the manufacturer's products within the jurisdiction, it appears to us unreasonable to conclude that the manufacturer does not do business in the jurisdiction (for products liability purposes) because it does not directly sell its products in the jurisdiction.
The manufacturer here is aware that the independent intermediary Heede sells its cranes for use in the United States. The only reasonable conclusion is that the manufacturer intends that its cranes shall be sold for use in the United States, including every state in which the independent intermediary's efforts may produce the desired results. Relator does not manufacture cranes to sell them to a collector. It must be held to know and intend the placement and use of its cranes in the United States, including Louisiana, and by whatever arrangement it causes its cranes to be here placed and used it is accomplishing its business purposes and here doing business.
We conclude jurisdiction is conferred by R.S. 13:3201(d), and therefore respondent's failure to have met R.S. 13:3204's requirements for service of process is a defect which respondent should be allowed to cure, C.C.P. art. 932.
Accordingly the judgment complained of is affirmed insofar as it rejected the exception to the jurisdiction and it is reversed insofar as it overruled the exception of insufficiency of service of process; and it is now ordered that the latter exception be maintained, with order to issue from the trial court allowing plaintiff a suitable delay to effect service of process under R.S. 13:3204; and the matter is remanded.
Affirmed in part, reversed and rendered in part and remanded.