Charles S. WELLS

v.

**ENGLISH ELECTRICAL, LIMITED, NORMAN ENGINE DIVISION and XYZ Distributing Company.**

**Civ. A. No. 17274.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

July 5, 1973.

Levy, Burleigh, Russo & Bourg, Lawrence K. Burleigh, Morgan City, La., for plaintiff.

Davidson, Meaux, Onebañe & Donohoe, J. J. Davidson, Jr., Lafayette, La., for English Electrical, Ltd., Norman Div.

Pugh, Boudreaux & Gachassin, Nicholas Gachassin, Jr., Lafayette, La., for Mid-Continent.

Caffery, Duhe & Davis, W. Eugene Davis, New Iberia, La., for The Employers' Liability Assurance Co.

## MEMORANDUM OPINION

PUTNAM, District Judge.

Plaintiff was allegedly injured on October 20, 1971, when a small diesel engine malfunctioned. He seeks damages from, among others, the manufacturer, English Electric Diesels, Limited (Norman Engine Division), a corporation organized under the laws of England. Jurisdiction is founded upon diversity. The amount in controversy allegedly exceeds $10,000.00. Presently before this court is a motion on behalf of English Electric Diesels, Limited, to dismiss for lack of jurisdiction over the person, or, in lieu thereof, to quash the return of service of summons on grounds that defendant has not been properly served with process. We deny defendants' motions.

The issue before this court is whether or not there has been a valid service of process by which this Court has obtained jurisdiction over the person of the defendant. F.R.Civ.P. Rules 4(d)(7) and 4(e), 28 U.S.C., permit service upon a nonresident corporation in the manner prescribed by the law of the state in which the district court is held. Opponents of the motion to dismiss assert that this Court has obtained jurisdiction over the defendant under Louisiana's "longarm" statute. LSA–R.S. 13:3201 et seq; thus, the inquiry of this Court is whether the defendant has brought itself within the scope of this statute and whether or not the application of the statute conforms to due process requirements.

The defendant, English Electric Diesels, Limited, is a foreign corporation organized under the laws of England. It employs no agents or personnel in Louisiana. It owns no property in Louisiana, it does not maintain an office in this state, it is not authorized to do business in this state, and has not in any manner appointed an agent for service of process in Louisiana. The defendant has not contracted to supply services or things in this state nor has it caused an injury by act or omission in this state. Thus, the only statutory basis for *in personam* jurisdiction is Louisiana's "longarm" statute, LSA–R.S. 13:3201, which provides in pertinent part:

> "A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
>
> \*     \*     \*     \*     \*     \*
>
> (d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or
> .   .   ."

This statute has recently been construed in several products liability cases. This Court finds the statute applicable to the facts and circumstances of this case.

In Boykin v. A. B. Lindenkranar, 252 So.2d 467 (La.App. 4th Cir. 1971), the court upheld the exercise of jurisdiction *in personam* over a Swedish crane manufacturer. In that case the defendant manufactured large building cranes and sold them in Sweden to a United States corporation which had the exclusive right to purchase the defendant's cranes and parts for export to the United States. Decedent's death occurred while he was working on one of these cranes. The United States corporation, an independent intermediary, had resold numerous cranes in Louisiana. The court said:

> "It appears to us that a manufacturer, whose products reach Louisiana in quantity that may reasonably be said to be substantial, is somehow successfully soliciting and doing business in Louisiana, for purposes of determining whether under R.S. 13:3201(d) he subjects himself to Louisiana's jurisdiction over a tort claim arising out of allegedly defective manufacture of his product outside of Louisiana.

> \* \* \* \* \* \*

> "In our opinion the intended breadth of R.S. 13:3201(d), for purposes of conferring jurisdiction in manufacturer's products liability cases, is not limited by traditional notions of contract privity; nor, for such purposes, is 'independent contractor' as opposed to 'agent' a defense to jurisdiction. These concepts have application where the cause of action arises out of a contract with, or the actions of, the independent contractor, for which the manufacturer would not even have liability. But where the independent contractor's only relation to the cause of action and to the jurisdiction is that it has served as the regular means of placing the manufacturer's products within the jurisdiction, it appears to us unreasonable to conclude that the manufacturer does not do business in the jurisdiction (for products liability purposes) because it does

not directly sell its products in the jurisdiction.

> "The manufacturer here is aware that the independent intermediary Heede sells its cranes for use in the United States. The only reasonable conclusion is that the manufacturer intends that its cranes shall be sold for use in the United States, including every state in which the independent intermediary's efforts may produce the desired results. Relator does not manufacture cranes to sell them to a collector. It must be held to know and intend the placement and use of its cranes in the United States, including Louisiana, and by whatever arrangement it causes its cranes to be here placed and used it is accomplishing its business purposes and here doing business." *Id.*, 252 So.2d 467, 470.

In Fisher v. Albany Machine and Supply Co., 261 La. 747, 260 So.2d 691 (1972), a products liability case, the Supreme Court of Louisiana found jurisdiction over an Oregon manufacturer of sawmill equipment under LSA–R.S. 13:3201(d). The action was brought by a sawmill employee who was injured when a stick of wood flew from a wood trimmer and hit him in the head. In this case the defendant manufacturer had only one wood trimmer in Louisiana and this one was sold to the plaintiff's employer, the sale being transacted through an out-of-state broker, f.o.b. Albany, Oregon. The court said:

> ". . . Albany has had 'contracts' with this State sufficient to warrant the exercise of our jurisdiction over it. Under our statute, there was 'an offense or quasi offense committed through an act or omission outside of this state' (possibly the improper manufacture of the trimmer). Albany derived 'substantial revenue from goods used or consumed or services rendered, in this state, within the clear meaning of our 'long arm' statute sufficient to subject it to the jurisdiction of our courts. $12,958.00 is

substantial revenue." *Id.,* 261 La. 747, 260 So.2d 691, 694.

Though there was another basis for jurisdiction the court also held that the defendant had derived substantial revenue from goods used in this state.

More recently, in the case of Moore v. Central Louisiana Electric Co., Inc., La. 273 So.2d 284 (1973), the state Supreme Court upheld the exercise of jurisdiction as to Sterling Models, a Pennsylvania entity which manufactures model airplanes, one of which was instrumental in the electrocution death of a young boy. The court held that Sterling was amenable to service under LSA–R.S. 13:3201 (d) on grounds that it regularly did business in the state of Louisiana, and regularly engaged in a persistent course of conduct in this state. The court found that the defendant sold products directly to a Louisiana distributor and to consumers and that it regularly advertised in national magazines. Pertinent to the case *sub judice* is the court's statement that sales of $6,610.00 to the Louisiana distributor over a period of four years were substantial.

Defendant English Electric Diesels, Limited (Norman Engine Division), sells its engines and spare parts to Mid-Continent Supply Co. (Midco). Since January 1, 1969, Midco has had the exclusive right to purchase engines and spare parts from the defendant for distribution in the United States. Most engines are sold f.o.b. United Kingdom and if freight is prepaid, Midco reimburses English Electric. To facilitate distribution of these engines in Louisiana, Midco has established four subdistributors in this state. These distributors stock Norman engines and spare parts. Pursuant to the agreement with Midco, defendant English Electric warrants these engines and will credit Midco for the warranty work that it or its subdistributors perform.

According to the deposition of Mr. W. E. Strittmatter, Vice President of Finance for Midco, sale of Norman engines in Louisiana for the period January 1, 1971 to July 31, 1972, totaled $31,000.00. In September, 1972, in answer to interrogatories, Midco gave its cumulative sales in Louisana as of that date as 43 Norman engines at a total price of $60,000.00. On deposition, Mr. Markwardt, Manager of Sales, Engines and Compressors for Midco estimates cumulative sales in Louisiana as of May, 1973, at $100,000.00, and testifies that sales are increasing.

Defendant English Electric has sent numerous employees to the United States to assist Midco in setting up subdistributors and in solving engine engineering, application and service problems. These employees visited Midco at their Dallas, Texas office; however, a few of these employees visited subdistributors, customers and potential customers of Midco in Louisiana for the purpose of discussing engine application and service problems. These visits were obviously for the mutual benefit of Midco and English Electric. Mr. Blundell Myers, Financial Director of English Electric Diesels, in answer to interrogatories, states that the purpose of these visits to the United States was to promote products of the defendant. Additionally, English Electric advertises in trade publications which are circulated world wide, some of which enjoy wide distribution in Louisiana.

■ Upon reviewing the law and the facts outlined above, we conclude that the Louisiana "long arm" statute is applicable to the circumstances of this case. We find that there has been an offense or quasi offense committed through an act or omission outside of this state (possibly the improper manufacturing of the engine). Also, we find that English Electric has derived substantial revenue from goods used or consumed within this state. We doubt that the revenue must be received directly by the defendant as the relator urges. We think think that it is sufficient that the defendant enjoys an indirect benefit

from the engines sold and used in this state. Additionally, defendant has taken steps through national advertising and personal visits to this state to promote its products and is aware of and desires the sales that are transacted here by Midco. It appears unreasonable to conclude that English Electric does not do business in this jurisdiction (for product liability purposes) because it does not directly sell its products in this state. See Boykin v. Lindenkranar, supra. We hold that the defendant, English Electric Diesels, Ltd., is amenable to service of process under LSA–R.S. 13:3201(d).

■ We find no impediment under the due process requirements of the Constitution to the exercise of *in personam* jurisdiction over this nonresident defendant. Coulter v. Sears, Roebuck and Co., 426 F.2d 1315 (5th Cir. 1970).

■ Defendant has also moved to quash the return of service of summons on grounds that it has not been properly served with process. The plaintiff originally caused the defendant to be served with process through the Louisiana Secretary of State. Service in this manner is not in compliance with LSA–R.S. 13:3204 which provides that when jurisdiction is founded on R.S. 13.3201 service may be made by the plaintiff's attorney by mail, or there may be personal service by one designated by the court in which the action is lodged. Plaintiff states in his brief that after the filing of this motion to quash he caused the defendant to be served under LSA–R.S. 13:3204 by directly mailing a copy of the summons and complaint. There is no proof of service in the record. Plaintiff takes the position that all defects have been cured.

F.R.Civ.P. Rule 4(e), 28 U.S.C., provides that service of process may be made upon a nonresident defendant "under the circumstances and in the manner prescribed" by the law of the state in which the district court is held. This court is of the opinion that service by the plaintiff under LSA–R.S. 13:3204 will satisfy the requirements of F.R. Civ.P. Rule 4, 28 U.S.C.

■ Wright and Miller, Federal Practice and Procedure, § 1092 at p. 353 (1969), state that Federal Rules 4(d)(7) and 4(e), 28 U.S.C., provide that service of process may be made in the *manner* prescribed by the law of the state in which the district court is held, while Rule 4(c) states by *whom* service is to be made. Apparently, one authorized by state law to make service of process may not make personal service of a federal summons, unless he is specially appointed by the court for that purpose. See F.R.Civ.P. Rule 4(c). Professors Wright and Miller cite as authority several district court cases decided before the 1963 revision of the Federal Rules of Civil Procedure. Additionally, they cite United States for Use of Tanos v. St. Paul Mercury Ins. Co., 361 F.2d 838 (5th Cir. 1966), cert. denied, 385 U.S. 971, 87 S. Ct. 510, 17 L.Ed.2d 435. At least one appeal court holds that Rule 4(c) does not limit the broad language of Rule 4(d)(7) which permits service "in the manner prescribed by the law of the state in which the district court is held." Especially would this be true where the statute or rule provided for other than personal service of process. Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, 243 F.2d 342 (2d Cir. 1957). See also Judge Brown's dissent in *Tanos*, supra. Notes of the Advisory Committee for the 1963 revision of the Federal Rules of Civil Procedure indicate that they intended to adopt the holding of *Farr & Co.*, supra; however, the rules themselves remain ambiguous in regard to the application of Rule 4(c) to nonpersonal service made pursuant to a state statute. 2 Moore's Federal Practice par. 4.08. It is the opinion of this court that the rule announced in *Farr & Co.* and that advocated by Judge Brown

in his dissent in *Tanos* is the better rule, i. e., that Rule 4(c) is inapplicable when the service is made under Rules 4(d)(7) and 4(e) pursuant to a state statute which provides for other than personal service of process. 2 Moore's Federal Practice, paragraph 4.08. What difference does it make whether the plaintiff or the marshal mails the notice provided for in LSA–R.S. 13:-3204? *Tanos* is distinguishable in that it dealt with the service of a writ of garnishment under a Special Rule, F.R.C.P. Rule 64, and with a service which took place prior to the 1963 revision of the Rules of Civil Procedure. Accordingly, we hold that service made by the plaintiff's attorney pursuant to LSA–R.S. 13:3204 satisfied the requirements of F.R.Civ.P. Rule 4(d)(3)(7) and (e) without the necessity of special appointment under Rule 4(c). We deny the defendants' motion to quash the return of service of process.

Summarizing, this Court finds that defendant English Electric Diesels, Limited, is amenable to suit under the Louisiana "long arm" statute and that the application of this statute does not offend the requirements of due process. We also find that service of process was made "under the circumstances and in the manner prescribed" by the state statute and that service in this manner satisfied all of the requirements of F.R.Civ.P. Rule 4(d) and (e), 28 U.S.C.

Recognizing, however, that this court is not the last word on this issue, and that the matter does involve a controlling question of law left hazy in light of *Tanos, Farr,* and the distinguished commentators mentioned above, we will certify the question for interlocutory appeal on application therefor.

We also leave the door open for plaintiff to cure the alleged defect by applying for appointment of his counsel to make service under Rule 4(c), if he chooses to do so.