**NORTH CENTRAL UTILITIES, INC.**

v.

**CONSOLIDATED PIPE AND SUPPLY COMPANY and U. S. Plastics, Inc.**

Civ. A. No. 18615.

United States District Court Court, W. D. Louisiana, Monroe Division.

April 12, 1974.

Joseph D. Guerriero, Parkerson & Guerriero, Monroe, La., for plaintiff.

Joseph D. Cascio, Jr., Hayes, Harkey, Smith & Cascio, Monroe, La., for defendant U. S. Plastics, Inc.

RULING ON MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER, LACK OF JURISDICTION OVER THE PERSON, IMPROPER VENUE, INSUFFICIENCY OF PROCESS, and INSUFFICIENCY OF SERVICE OF PROCESS

DAWKINS, Senior District Judge.

In its present posture, this matter is before us upon motion by defendant, U. S. Plastics, Inc., to dismiss the complaint for (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. In our ruling of October 26, 1973, we dismissed the complaint on the first ground without prejudice to plaintiff's filing an amended complaint, properly establishing diversity jurisdiction. Such was done November 2, 1973. We now consider the remaining points made in the motion.

Since plaintiff now has made it clear that jurisdiction is based solely on diversity, there is no longer any question that venue is proper under 28 U.S.C. § 1391(a). Likewise, we find no merit in U. S. Plastics' motion regarding alleged insufficiency of process, since the record does not reveal any deficiency in the form of process required by Rule 4(b), F.R.Civ.P. But the moving defendant's objections to *in personam* jurisdiction and service of process require more serious consideration.

■ Assertion of jurisdiction over a foreign corporation in a diversity case requires that we clear two hurdles. We first must divine whether the State Courts of Louisiana would assert jurisdiction over the non-resident corporation; and, if such is the case, we then must determine whether such assertion would offend principles of due process under the Fourteenth Amendment.[1]

A proper determination of whether U. S. Plastics is amenable to process under Louisiana law rests upon interpretation of the State's "long-arm" statute, La.R.S. 13:3201, which reads in part:

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

---

1. The two aspects of this problem were set forth and discussed in Lone Star Motor Import, Inc., v. Citroen Cars Corporation, 288 F.2d 69, 72 (5th Cir., 1961); Stanga v. McCormick Shipping Corporation, 268 F.2d 544, 548 (5th Cir., 1959); and Rosenthal v. Frankfort Distillers Corporation, 193 F.2d 137, 141 (5th Cir., 1951). See also I Barron & Holtzoff, Federal Practice and Procedure, § 179, pp. 675, 696–698 (1960); 2 Moore's Federal Practice, § 4.25 [1], p. 1147 (1964).

"(a) transacting any business in this state;

"(b) contracting to supply services or things in this state;

"(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;

"(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

\* \* \*"

■ Applicability of R.S. 13:3201 largely is an issue of fact, resolution of which must depend upon the peculiar circumstances of each individual case. Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co., 283 So.2d 687 (La.S.Ct., 1973).

From the complaint and affidavits filed by plaintiff and U. S. Plastics, we have ascertained the following relevant facts:

This is an action by North Central Utilities, Inc., a Louisiana corporation, against the manufacturer and distributor of certain allegedly defective pipe which North Central contends caused it monetary damages.

North Central had contracted to construct a water distribution system in Union Parish, Louisiana. To carry out its contract, North Central purchased polyvinyl chloride pipe from Consolidated Pipe & Supply Company, an Alabama corporation doing business in Louisiana. Consolidated, in turn, had purchased the pipe from its manufacturer, U. S. Plastics, Inc., a Mississippi corporation, which has its principal place of business in Mississippi and is not qualified to do business in Louisiana. It has no agent for service of process in Louisiana, and has no employees or agents residing or working full-time in Louisiana.

The transaction between Consolidated and U. S. Plastics was confected by telephone between an agent of Consolidated in Alabama and an agent of U. S. Plastics in Mississippi. The latter agreed to deliver the pipe to the Louisiana job site. This was accomplished by its delivery to Norman Trucking Company, Inc., in Mississippi, which in turn transported it to Louisiana. Although U. S. Plastics owns no stock and has no interest in Norman, there appears to be some doubt as to whether Norman transports goods for any companies other than U. S. Plastics.

January 7, 1972, plaintiff informed Consolidated it was having problems in bonding the pipe. About January 25, 1972, a representative of U. S. Plastics came to the construction site in Union Parish and observed plaintiff's method of laying and fitting the pipe, approving the manner in which that was being done. He also personally fitted and laid some of the pipe. At a later date, after the pipe was laid, a water pressure test was conducted, disclosing substantial leakage. Thereafter, the same representative returned to the job site to examine the problem. He returned there on still another date accompanied by Wallace Norman, president of U. S. Plastics, to observe and inspect repair of the leaks.

In order to show that this was not the sole occasion when U. S. Plastics' pipe has been used in Louisiana, plaintiff submitted an affidavit executed by one Sherman Clark, an employee of Mid-South Tank & Utilities, Inc., declaring that Mid-South used pipe manufactured by U. S. Plastics in its construction of a water system near Mansfield, in De Soto Parish, Louisiana, during 1972. He swore also that there, too, a representative of U. S. Plastics visited the job site and observed laying of the pipe.

■ After thorough study of Louisiana jurisprudence, we conclude that, based upon these facts, Louisiana Courts would exercise jurisdiction over U. S.

Plastics under La.R.S. 13:3201(d). Plaintiff's action against U. S. Plastics must be characterized as a products liability action, and, while Louisiana jurisprudence is not altogether clear whether such actions are based upon tort or contract,[2] its Courts have not hesitated to apply Section 3201(d) in such matters to find valid jurisdiction.

Three recent Louisiana Court rulings in products liability situations have applied Section 3201(d) to hold a foreign manufacturer amenable to process under facts quite similar to the action before us:

Fisher v. Albany Machine & Supply Co., 261 La. 747, 260 So.2d 691 (1972), involved injury to a workman caused by a defective lumber trimmer purchased by a Louisiana corporation from an Oregon manufacturer. The sale had been consummated by telephone and was FOB Albany, Oregon, with delivery by common carrier and freight paid by the Louisiana corporation. The Court held that "[u]nder our statute, there was 'an offense or quasi offense committed through an act or omission outside of this state' (possibly the improper manufacture of the trimmer)," finding that the $12,958 the manufacturer received in payment for the trimmer amounted to " . . . 'substantial revenue from goods used or consumed or services rendered, in this state,' within the clear meaning of our 'long arm' statute sufficient to subject it to the jurisdiction of our courts." *Id.*, 260 So.2d at 694.[3]

Moore v. Central Louisiana Electric Co., Inc., 273 So.2d 284 (La.S.Ct., 1973), involved two foreign manufacturers of parts for model airplanes which were held amenable to Louisiana process in an action for damages caused by a model airplane, utilizing their parts, striking a high-voltage wire in this State. As to one, the Court found that sales amounting to $6,609.72 to a New Orleans distributor during 1966 through 1970, coupled with advertisement in national magazines, constituted regular and substantial sales. As to the other, the Court found it enough that it intended to sell in Louisiana through national advertising and in fact made some direct sales to individuals and dealers in the State.

Boykin v. Lindenkranar, 252 So.2d 467 (La.App., 4th Cir., 1971), was another instance where a Louisiana Court applied Section 3201(d) to a products liability action. It involved a Swedish crane manufacturer who did not sell its product in the United States, did not maintain an office or agent in the United States, and was not authorized to do business in the United States. The cranes were sold in Sweden to a United States corporation which in turn distributed them throughout the United States and the principal (and almost only) connection between that defendant and Louisiana was that the cranes did in fact reach Louisiana in numbers constituting more than a mere isolated instance. The Court held that " . . . a manufacturer, whose products reach Louisiana in quantity that may reasonably be said to be substantial, is somehow successfully soliciting, and doing business in Louisiana" for purposes of the State's "longarm" statute. *Id.*, at 470.

The Court stated:

"In our opinion the intended breadth of R.S. 13:3201(d), for purposes of conferring jurisdiction in manufacturer's product liability cases, is not limited by traditional notions of

---

2. *See,* Percy, "Products Liability—Tort or Contract," 40 Tul.L.Rev. 715 (1966); Murray, "Implied Warranty against Latent Defects: A Historical Comparative Law Study, 21 La.L.Rev. 586 (1961); Note, 26 La.L. Rev. 447 (1966); Note, 38 Tul.L.Rev. 194 (1963); Comment, 22 La.L.Rev. 435 (1962).

3. In a concurring opinion, Louisiana Supreme Court Justice Barham suggests a more expansive approach in determining jurisdictional due process in products liability cases. Fisher v. Albany Machine & Supply Co., 261 La. 747, 260 So.2d 691 (1972), at 695–696.

**680**

contract privity, nor, for such purposes, is 'independent contractor' as opposed to 'agent' a defense to jurisdiction. These concepts have application where the cause of action arises out of a contract with, or the actions of, the independent contractor, for which the manufacturer would not even have liability. But where the independent contractor's only relation to the cause of action and to the jurisdiction is that it has served as the regular means of placing the manufacturer's products within the jurisdiction, it appears to us unreasonable to conclude that the manufacturer does not do business in the jurisdiction (for products liability purposes) because it does not directly sell its products in the jurisdiction."

La.R.S. 13:3201(d), as interpreted in the cited decisions, clearly renders U. S. Plastics amenable to process. The alleged production of defective pipe causing injury in Louisiana is " . . . an offense or quasi offense committed through an act or omission outside of this state, . . ." and under *Fisher* and *Moore, supra,* the revenue received from sale of this pipe alone constitutes derivation of "substantial revenue" from goods used in Louisiana. Moreover, the evidence that pipe manufactured by U. S.. Plastics was used substantially in Louisiana on at least one other occasion, considered with defendant's failure to present any contrary evidence, strongly indicates that these are not merely two isolated instances when defendant's pipe has been used in this State. See *Moore, supra,* 273 So.2d at 286. Finally, as indicated in *Boykin, supra,* the fact that an independent contractor is used to distribute the pipe in Louisiana makes no difference.

Now presented is the second question, whether the Louisiana statute, as thus applied, offends the Federal Constitution. Several landmark Supreme Court decisions have outlined the constitutional limits upon a state's power to exercise jurisdiction over foreign corporations. The severe restrictions made in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), were laid aside in International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), where the Court announced that " . . . due process requires only that in order to subject a defendant to a judgment *in personam* . . . he have certain *minimum contacts* with it [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Emphasis added.) This principle was expanded in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where mail order solicitation of a single insurance policy by a foreign insurer, with premium payments made from the forum state, was held to be sufficient contact to satisfy due process. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), followed *McGee* but clarified its meaning by noting that " . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Applying these principles, we readily rule that U. S. Plastics' activities constitute sufficient minimum contacts with Louisiana. As noted, on at least two occasions, it sold substantial amounts of its products for use in Louisiana, and, incident to these sales, its employees made several trips to Louisiana to check the manner in which the pipe was being laid. Certainly it was foreseeable that a defect in material might cause damage in Louisiana such as has been alleged here. Clearly, Louisiana has a paramount interest in providing a forum for its citizens to seek recompense for such damages.

By engaging in such business activities in this State, U. S. Plastics purpose-

ly availed itself of the benefits and protections of Louisiana law. Consequently, we must hold that our acceptance of *in personam* jurisdiction over U. S. Plastics is consistent with the United States Constitution. Such does not offend "traditional notions of fair play and substantial justice."

With respect to the motion to dismiss for insufficiency of service of process, we now agree with U. S. Plastics that plaintiff has not served process properly either under Rule 4(d)(3), F. R.Civ.P., or under La.R.S. 13:3204,[4] as allowed by Rule 4(e), F.R.Civ.P.

In an apparent attempt to comply with the requirements of La.R.S. 13:3471(1),[5] plaintiff had process served on the Louisiana Secretary of State, who in turn mailed it to U.. S. Plastics. Although the result is the same, it is fundamental that this defendant has the right to proper service of process. Since it is apparent that plaintiff will be able to obtain proper service, we will exercise our discretion by quashing the service, rather than by dismissing the case, 5 Wright and Miller, Federal Practice and Procedure, § 1354. Thus we allow plaintiff thirty days within which properly to serve process, either under Rule 4(d)(3), F.R.Civ.P., or Louisiana R.S. 13:3204.

It, therefore, is ordered that the motions by U. S. Plastics to dismiss for lack of jurisdiction over the subject matter, lack of jurisdiction over the person, improper venue, and insufficiency of process are denied. It is further ordered that the service of process on U.

S. Plastics be quashed, allowing plaintiff thirty days from the date of this order within which to effect proper service, or failing therein to suffer dismissal of this action.

---

4. "§ 3204. *Service of process*

"A certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by counsel for the plaintiff to the defendant by registered or certified mail, or actually delivered to the defendant by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general jurisdiction.

"Service of process so made has the same legal force and validity as personal service on the defendant in this state."

5. Even if plaintiff had complied with the requirements of 13:3471(1), it is unclear whether service would have been sufficient since that statute applies only where the defendant "has engaged in a business activity in this state."