Mrs. Leta Mae STARK et al.

v.

**MOBILE AERIAL TOWERS, INC., et al.**

Daniel Construction Company, Inc., et al.,
Intervenors.

James F. MANNING

v.

**MOBILE AERIAL TOWERS, INC., et al.**

Daniel Construction Company, Inc., et al.,
Intervenors.

Civ. A. Nos. 17683, 17684.

United States District Court,
W. D. Louisiana,
Monroe Division.

May 1, 1974.

Marshall Blackwell, Kostelka & Blackwell, Monroe, La., Wilson M. Montero, Jr., Martzell & Montero, New Orleans, La., for plaintiffs.

John L. Pitts, Stafford, Pitts & Bolen, Alexandria, La., for defendants Mobile Aerial Towers, Inc. and Transportation Ins. Co.

Gordon E. Rountree, Cook, Clark, Egan, Yancey & King, Shreveport, La., for Plastic Composites Corp.

J. Bachman Lee, Theus, Grisham, Davis & Leigh, Monroe, La., for intervenors.

DAWKINS, Senior District Judge.

RULING ON MOTIONS TO DISMISS
FOR LACK OF JURISDICTION
OVER THE PERSON

These motions will be considered together since they are made by the same defendant concerning identical issues of fact and law.

These products liability actions are brought by Louisiana plaintiffs for personal injuries and wrongful death allegedly caused by defects in a "Hi-Ranger" lift device, a machine which elevates men and equipment above ground for work in high places. The accident occurred in Louisiana when a fiberglass bucket holding two workmen broke loose from the lift, causing them to fall to the ground.

One of the defendants, Plastic Composites Corp., has moved to dismiss for lack of *in personam* jurisdiction alleging insufficient contacts with the State of Louisiana. This presents a dual problem involving state and federal interests. We first must determine whether Plastic is amenable to process under Louisiana's "long-arm" statute, La.R.S. 13:3201, a decision controlled by State Court interpretations. If it is, then we must consider whether such assertion of *in personam* jurisdiction offends due process principles of the United States Constitution, a matter controlled by federal law.[1]

In as much as appropriate application of La.R.S. 13:3201 largely is to be resolved by facts, Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co., 283 So.2d 687 (La.S.Ct., 1973), we first must ascertain the relevant facts from the complaint, affidavits, and answers to interrogatories filed by plaintiffs and Plastic.

Plastic manufactures most of the component fiberglass parts utilized by Mobile Aerial Towers, Inc., in assembling its "Hi-Ranger" lift device. These include the bucket in which men ride, fiberglass insulation for protection against electrical shock, and a fiberglass rim securing the bucket to the lift. It was the allegedly defective condition of the rim which plaintiffs contend caused this accident.

Plastic and Mobile are Indiana corporations whose principal places of business are in Fort Wayne. Plaintiffs contend that Mobile regularly advertises its product in Louisiana and has agents traveling here soliciting business. Plas-

tic, however, is not authorized to do business in Louisiana and has no office, employees, or agents here. It never directly has solicited sale of its products in Louisiana (except by advertising in the Thomas Register of American Manufacturers, a national periodical that is an index to manufacturers in the United States) and never has sold directly to anyone in this State.

Although Mobile apparently is not Plastic's sole customer, Plastic does a yearly volume of business with it, amounting to some $600,000 to $700,000, an average unit price for fiberglass ranging from $500 to $1,000 per lift device.

According to Mobile's distributor of lifts in this State, there have been at least 101 "Hi-Ranger" lifts sold or leased for use here, each ranging from $15,000 to $30,000 in price, depending upon height and equipment options. Approximately one-fourth of this price is attributable to fiberglass components supplied by Plastic.[2]

The pertinent provisions of Louisiana's long-arm statute, La.R.S. 13:3201, are:

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

\*    \*    \*    \*    \*    \*

(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial rev-

---

1. The two aspects of this problem were set forth in Lone Star Motor Import, Inc. v. Citroen Cars Corporation, 288 F.2d 69, 72 (5th Cir., 1961); Stanga v. McCormick Shipping Corporation, 268 F.2d 544, 548 (5th Cir., 1959); and Rosenthal v. Frankfort Distillers Corporation, 193 F.2d 137, 141 (5th Cir., 1951). See also 2 Moore's Federal Practice, § 4.25 [1], p. 1147 (1964); Wright & Miller, Federal Practice and Procedure, § 1075, p. 301 (1969).

2. Answer of Mobile to plaintiff's Interrogatory B:
   "The approximate cost or price of 'Hi-Ranger' Mobile Aerial Tower units and the approximate cost or price of those component parts supplied by Plastic Composites Corporation with regard to such units are as follows:
   "5   T   D—48PHI—380°, S/N 1261538 sold in 1961 for $8,776.00 of which approximately $1,950.00 was for the fiberglass components."

enue from goods used or consumed or services rendered, in this state;

\*   \*   \*   \*   \*   \*

■ Presented with the precise jurisdictional issue here involved, the Fourth Judicial District Court of Louisiana, where identical suits were filed by these plaintiffs in that State trial Court, held that Plastic did not have sufficient minimum contacts with Louisiana to be reached by § 3201(d) or to meet the minimum requirements of due process. James S. Manning v. Mobile Aerial Towers, Inc. et al., 4th Judicial District Court of Louisiana, No. 91,712; Leta Mae Stark et al. v. Mobile Aerial Towers, Inc. et al., 4th Judicial District Court of Louisiana, No. 91,713; both decided April 2, 1974. We respectfully must disagree.

It is true, of course, that in a diversity case such as this, we are *Erie*-bound to follow State Court jurisprudence as to the scope and application of the State long-arm statute.[3] However, ". . . under some conditions, federal authority may not be bound even by an intermediate state appellate court ruling." Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The Supreme Court enunciated in *Bosch* the doctrine that

". . . the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State.

In this respect, it may be said to be, in effect sitting as a state court." *Id.* The Fifth Circuit also has said:

"It is, of course, much preferable for the federal court to apply state law as precisely articulated by a state court of highest jurisdiction. However, if no state court decision precisely in point is available to guide the federal court, we are compelled to decide to the best of our ability what the state court *would* hold if this case were *now* before it." (Emphasis by the Court.) Dawkins v. White Products Corporation of Middleville Michigan, 443 F.2d 589, 591 (5th Cir., 1971).

The Louisiana Supreme Court has not ruled upon the precise issue here; but its interpretations of the Louisiana long-arm statute in similar products liability cases lead us inescapably to the conclusion that, if faced with the jurisdictional question here presented, it would hold Plastic amenable to process under § 3201(d), which provides "personal jurisdiction over a nonresident . . . as to a cause of action arising from the nonresident's . . . causing injury or damage in this state by . . . [a] quasi offense committed through an act or omission outside of this state if he . . . derives substantial revenue from goods used or consumed . . . in this state . . . . ."

In Fisher v. Albany Machine and Supply Co., 261 La. 747, 260 So.2d 691 (1972) Louisiana's highest Court resolved any remaining vestige of doubt that defective production of goods causing injury in this State indeed amounts to a "quasi offense" for purposes of its

---

**3.** There is considerable authority that the rule that federal courts determine *in personam* jurisdiction according to the law of the State where the court sits is not based upon any requirement by *Erie*. Arrowsmith v. United Press International, 320 F.2d 219, 226 (2nd Cir., 1963); 2 Moore's Federal Practice, § 4.25 [7], pp. 1178–1181; Wright and Miller, Federal Practice and Procedure,

§ 1975, p. 306. However, the Fifth Circuit has made specific pronouncements to the contrary. Walker v. Savell, 335 F.2d 536, 540 (5th Cir., 1964); Eyerly Aircraft Company v. Killian, 414 F.2d 591 (5th Cir., 1969), at 599, note 9; Coulter v. Sears, Roebuck & Company, 426 F.2d 1315 (5th Cir., 1970), at 1316, note 4.

long-arm statute.[4] There it was held that $12,958 derived from a single sale of goods amounts to "substantial revenue" within the meaning of the statute. *Fisher* involved injury to a workman caused by a defective lumber trimmer purchased by a Louisiana corporation (Terrebonne) from an Oregon manufacturer (Albany) through a broker in Tennessee (Wilco). The sale was FOB Albany, Oregon, with delivery by common carrier. This was the *only* sale by Albany of its product in Louisiana.

There were several facts, however, which arguably could distinguish *Fisher* from the actions now before use: 1) the sale was made by Albany directly to a Louisiana corporation pursuant to telephone negotiations with it; and 2) Albany's sawmill equipment was displayed at an equipment show in New Orleans on one occasion by Wilco, with Albany bearing a substantial part of the expense. Notwithstanding, we consider these additional business contacts not to be crucial to the Court's applicaton of § 3201(d), as shown, because of the Court's clear definitive ruling without any reference to the further contacts. It merely mentioned these in order to bolster its constitutional finding of "minimum contacts."[5] Of course, its interpretations in *this* regard are not binding upon us.

Plastic's alleged production of a defective product causing injury in Louisiana, considered with its derivation of between $50,000 and $100,000 in revenue from its "goods" used here, clearly brings it within the purview of §

3201(d). We divine no requirement that the goods must be sold directly by the foreign manufacturer to a Louisiana resident. Indeed, the Louisiana Fourth Circuit Court of Appeal, in Boykin v. Lindenkranar, 252 So.2d 467, 470 (La. App. 4th Cir., 1971), has stated that

"In our opinion the intended breadth of R.S. 13:3201(d), for purposes of conferring jurisdiction in *manufacturer's products liability cases,* is not limited by traditional notions of contract privity; nor, for such purposes, is 'independent contractor' as opposed to 'agent' a defense to jurisdiction. These concepts have application where the cause of action arises out of a contract with, or the actions of, the independent contractor, for which the manufacturer would not even have liability. But where the independent contractor's only relation to the cause of action and to the jurisdiction is that it has served as the regular means of placing the manufacturer's products within the jurisdiction, it appears to us unreasonable to conclude that the manufacturer does not do business in the jurisdiction (for products liability purposes) because it does not directly sell its products in the jurisdiction." (Emphasis added.)

*Boykin* held a Swedish crane manufacturer amenable to *in personam* Louisiana jurisdiction in a products liability case where

" . . . the principal (and almost the only) evidence of a connection between relator and Louisiana is that

---

4. Louisiana jurisprudence is not settled as to whether products liability actions lie in theories of tort or contract. *See,* Percy, "Products Liability—Tort or Contract," 40 Tul.L. Rev. 715 (1966); Murray, "Implied Warranty against Latent Defects: A Historical Comparative Law Study," 21 La.L.Rev. 586 (1961); Note, 26 La.L.Rev. 447 (1966); Note, 38 Tul.L.Rev. 194 (1963); Comment, 22 La.L.Rev. 435 (1962).

5. Fisher v. Albany Machine and Supply Co., 261 La. 747, 260 So.2d 691, 694 (1972):
   "Under the facts presented in the case before us, there is no constitutional barrier to

the application of Louisiana 'long arm' statutes. The requirements of due process have been met. Albany has had 'contacts' with this State sufficient to warrant the exercise of our jurisdiction over it. Under our statute, there was 'an offense or quasi offense committed through an act or omission outside of this state' (possibly the improper manufacture of the trimmer). Albany derived 'substantial revenue from goods used or consumed or services rendered, in this state' within the clear meaning of our 'long arm' statute sufficient to subject it to the jurisdiction of our courts. $12,958.00 is substantial revenue."

relator's cranes do reach Louisiana, in numbers amounting to more than an isolated instance or two, through what relator describes as sales in Sweden to a United States corporate entity . . . which has the exclusive right to buy relator's cranes and parts for export to the United States." *Id.*, at 469.

Plastic argues that the Court in *Boy-kin* relied on the "doing and soliciting business" clause in § 3201(d), expressly declining to rule upon whether the foreign manufacturer had "derive[d] substantial revenue from goods used or consumed" in Louisiana by the independent corporation's sale of at least nine cranes in Louisiana at $50,000 each. We are sure the Court's seeming reluctance in that respect has dissipated in light of the Louisiana Supreme Court's subsequent decision in *Fisher*. We do not believe the Court to have meant that a non-resident directly must sell its products in Louisiana to "derive revenue" from them within the meaning of the statute.

Plastic further attempts to dissuade reliance on *Boykin* by citing Stelly v. Quick Manufacturing, Inc., 228 So.2d 548 (La.App., 3rd Cir., 1969), a products liability case holding that a foreign manufacturer which sold to an independent Texas distributor who, in turn, sold to Louisiana residents, was not subject to *in personam* jurisdiction in this State. It is not clear whether *Stelly* directly conflicts with *Boykin* since there the Court did not consider subsection (d) of § 3201. Moreover, the decision was distinguished by Judge Miller of the Third Circuit in his dissenting opinion in Moore v. Central Louisiana Electric Company, 257 So.2d 702, 712 (La.App., 3rd Cir., 1972); and by *Boykin*, on the ground that the manufacturer in that case did not manufacture the product which caused the injury but merely had assumed the assets of the company which had manufactured it. We also note that both of the decisions which relied on *Stelly*, in dismissing for lack of *in personam* jurisdiction, have been re-versed on appeal. Fisher v. Albany Machine & Supply Co., 246 So.2d 218 (La. App., 1st Cir., 1971), reversed in part 261 La. 747, 260 So.2d 691 (1972), and Moore v. Central Louisiana Electric Company, Inc., 257 So.2d 702 (La.App., 3rd Cir., 1972), reversed 273 So.2d 284 (La.S.Ct., 1973).

■ In any event, we are not bound to follow *Stelly* since it based its decision on interpretations of federal due process rather than state law.

Finally, Plastic asserts that not even *Boykin* went so far as to apply § 3201(d) to a component parts manufacturer. Considering the breadth of the Louisiana long-arm statute, however, we see no valid distinction between the sale of products to an independent distributor for resale and the sale of products to another manufacturer who incorporates them in its own product before resale, where such reasonably could and should have been anticipated. It is clear that Plastic supplies such substantial amounts of its product to Mobile that it must have known it would be incorporated in lift devices reaching Louisiana, as well as other states, in amounts sufficient to constitute "doing business" and obtaining "economic benefits" in this State.

The Louisiana Supreme Court's refusal to extend jurisdiction to a component parts manufacturer in *Fisher* does not dictate a different result. A speed reducer which was incorporated in the lumber trimmer manufactured by Albany which caused injury in that case was manufactured by the George P. Dorris Company, a Missouri corporation. Dorris had sold the speed reducer to the Alfred Halliday Co., Louisville, Kentucky, which in turn used it in a product it manufactured. No other connection between Dorris and the accident was shown, nor did it appear just how the speed reducer came to be incorporated in the trimmer manufactured by Albany. Neither was it shown that the Dorris speed reducer in any manner caused or contributed to the injury. The Louisiana Supreme Court merely held that, un-

der those circumstances, the appeal and trial Courts were correct in sustaining the declinatory exception (objection to *in personam* jurisdiction) as to this defendant. Certainly, we too would find that § 3201 does not provide jurisdiction under those meager facts. This does not mean that a component parts manufacturer with the requisite jurisdictional contacts specified in § 3201 is not amenable to *in personam* jurisdiction in Louisiana Courts.

Finally, the expansive application of § 3201 by the Louisiana Supreme Court in *Fisher* and Moore v. Central Louisiana Electric Co., 273 So.2d 284 (La.S.Ct. 1973), coupled with its recognition that

> "[i]t was the intention of the Louisiana Legislature in its enactment of R.S. 13:3201 to extend the personal jurisdiction of Louisiana courts over nonresidents to the full limits of due process under the Fourteenth Amendment," [6]

further convinces us that it would make Plastic amenable to jurisdiction in Louisiana Courts.

■ Our assertion of jurisdiction over Plastic does not offend any of the principles of due process of the Federal Constitution as enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and as applied by the Fifth Circuit in Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir., 1969); Coulter v. Sears, Roebuck & Co., 426 F.2d 1315 (5th Cir., 1970); and Dawkins v. White Products Corp. of Middleville, Michigan, 443 F.2d 589 (5th Cir., 1971).

In summary, it is clear that the Louisiana Supreme Court *would* assert jurisdiction over Plastic under La.R.S.

13:3201(d) and that such assertion would not offend due process.

For the reasons given, and upon the basis of the authorities cited, it is ordered that Plastic Composites Corporation's motions to dismiss for lack of jurisdiction over the person be denied.

---

6. Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co., 283 So.2d 687, 689 (La.S.Ct., 1973). Judge Miller in a dissenting opinion in Moore v. Central La. Electric Co., 257 So.2d 702, 707 (La.App.3rd Cir., 1972), even has suggested that jurisdiction under La.R.S. 13:3201 is co-extensive with the due process leniency allowed in *International Shoe, McGee,* and their progeny.