## STANDARD FITTINGS COMPANY

v.

## SAPAG, S.A.

Civ. A. No. 76–0473.

United States District Court,
W. D. Louisiana,
Opelousas Division.

Nov. 30, 1977.

Leslie J. Schiff, Sandoz, Sandoz & Schiff, Opelousas, La., for plaintiff.

Rutledge C. Clement, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant.

## RULING ON MOTION

NAUMAN S. SCOTT, Chief Judge.

This matter is before the court on a motion to dismiss for lack of in personam jurisdiction filed by SAPAG, S.A. (defendant). Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

Standard Fittings, a Louisiana domiciliary, alleges in its petition that the defendant, a French domiciliary, has breached an exclusive distributorship contract between the parties. Defendant denies plaintiff's contention as to the nature of the contract and avers that it was only an "agreement to agree" sometime in the future. In any event, interpretation of the agreement is not in issue at this time. The present inquiry relates specifically to defendant's motion to dismiss. Defendant's motion is predicated upon its contention that it is not amenable, under the Louisiana Long Arm Statute[1] and principles of constitutional due process, to the personal jurisdiction of a Louisiana tribunal.

Factors giving rise to the presence or absence of in personam jurisdiction are insusceptible of general application and consequently must be analyzed upon the singular basis of their presentation to the court. *North Central Utilities, Inc. v. Consolidated Pipe & Supply, Inc.*, 62 F.R.D. 676 (W.D.La. 1974); *Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co.*, 283 So.2d 687 (La.1973). The facts relevant to defendant's motion were determined from pleadings, memoranda, affidavits, attachments, and correspondence on file in the record.

The initial contact between the parties was made on January 22, 1974 when plaintiff's Sheldon Courville, in Opelousas, telephoned defendant's L. L. Fredrick in New Jersey and made inquiries about SAPAG products. As a result of this conversation certain catalogs of the defendant were sent to the plaintiff.[2] In February 1974 the President of Standard Fittings, Irwin Davlin, traveled to France and conducted negotiations with L. R. Guillemin and R. Patteeuw of SAPAG, which negotiations resulted in an alleged agreement that is the object of this lawsuit. In March 1974 the office of plaintiff's K. E. Vreeland placed a call to Fredrick resulting in the shipment of more catalogs to the plaintiff. In June 1974 Fredrick visited plaintiff's factory in Opelousas, Louisiana; it is unclear what business, if any, was conducted on this vis-

---

1. L.R.S. 13:3201.

2. Letter from L. L. Fredrick to Sheldon Courville dated January 22, 1974.

it.[3] In September 1974, Davlin returned to France, apparently to amend certain portions of the agreement. The agreement stipulated that SAPAG would ship the goods to Houston or New York, where title would shift to the plaintiff. The agreement also required Standard Fittings to obtain a letter of credit in favor of the defendant. This was done through a New Orleans bank. In February 1975 George Lelievre and R. Patteeuw visited the Standard Fittings plant in Opelousas for a day; it is unclear what business, if any, was conducted on this visit.

■ Plaintiff has the burden of proving jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973); *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir. 1973). Unless a defendant possesses certain minimum contacts with a forum, the proper place of suit is his domicile. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Riverland Hardwood v. Craftsman Lumber Co.*, 239 So.2d 465 (La.App.1970). The contacts with the foreign forum must be such that "[defendant must] be found to have purposefully enjoyed the benefits and protection of Louisiana law." *Benjamin v. Western Boat*, at 729.

The vehicle whereby in personam jurisdiction is extended over foreign domiciliaries in Louisiana is the Louisiana Long Arm Statute, L.R.S. 13:3201(a):

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresidents (a) transacting any business in this state; . ."

As indicated above, the relating elements are a cause of action that arises out of the transaction of business in Louisiana. But this is only the threshold barrier. Another obstacle must be traversed before the defendant will be bound by a judgment in a foreign forum. The second barrier consists of constitutional due process considerations:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of the court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'. . . . But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of the state." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 319, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ As the foregoing indicates, it is incumbent upon the court to initially determine if the present cause of action arose from the transaction of business within Louisiana. Once this is found, there must be a secondary determination made as to whether the imposition of in personam jurisdiction in Louisiana over the foreign defendant would transgress the bounds of due process. The scope of both are not coterminous. Thus the absence of one factor would preclude in personam jurisdiction regardless of the presence of the other. 2 Moore's Federal Practice § 4.25(5).

---

**3.** The status of L. L. Fredrick in his relationship with the defendant merits some attention. It appears from his affidavit and other material in the record that L. L. Fredrick was a "manufacturer's representative" who promoted the products of those with whom he contracted. His arrangement with SAPAG required him to expend 50 days a year in promotion of SAPAG products. However, it appears he possessed neither actual nor apparent authority to engage in substantive negotiations for SAPAG. This conclusion is borne out by the fact that Davlin journeyed to France to negotiate with the SAPAG officers, rather than attempt to contract with Fredrick.

Plaintiff, in Paragraph 2 of its petition, proffers a number of incidents which it contends constitute the transaction of business by the defendant in Louisiana:

"SAPAG's contacts within the State of Louisiana include the following: (a) Defendant's representative, L. L. Fredrick, visited Opelousas, St. Landry Parish, Louisiana, on at least one occasion during 1974, to discuss the subject matter herein sued upon. (b) Goods manufactured by SAPAG were shipped into Opelousas, Louisiana, pursuant to the contract upon which the suit is based. (c) The contract upon which this suit is based contemplated that a substantial number of acts necessary to its performance would be done and carried out in Louisiana, including the placing of purchase orders, the payment for goods, and receipt of goods. (d) Defendant's representatives Messrs. Lelievre and Patteeuw conducted negotiations personally in Opelousas, Louisiana during 1975 which negotiations were in connection with the contract herein sued upon. (e) Defendant SAPAG has had repeated contact with Standard representatives in Opelousas, St. Landry Parish, Louisiana, by various forms of communication including numerous telex messages, and various other forms of correspondence all of which was sent pursuant to the contract herein sued upon. (f) Remittance for goods shipped under this contract originated and was made upon banks in St. Landry Parish, Louisiana. (g) The acts described hereinabove are not intended to be an exclusive list of the contacts of SAPAG within the State of Louisiana, but represent merely a sampling of contacts."

The above factors necessitate a decision by the court as to whether their existence constitutes a "transaction of business". Sections (e) and (f) relate to the transmission of correspondence between Louisiana and France, and the remittance for goods made through Louisiana banks. In the *Benjamin* case there were more than 50 instances of correspondence between Louisiana and Washington, and the plaintiff there made 7 payments through New Orleans banks totaling $127,373.33. However, the court in *Benjamin* declined to characterize this activity as the transaction of business. *Benjamin* would also govern the letter of credit established by the plaintiff at the New Orleans bank. Section (c) is couched in the future tense and thus is inappropriate for present consideration. However, even if the acts in (c) had occurred, we do not believe their impact would exceed in consequence for our purposes those listed in (e) and (f). The agreement between the parties stipulates that SAPAG's performance by the shipment of goods would terminate by their delivery in Houston or New York. Hence, any presence in Louisiana of SAPAG manufactured products would be traceable solely to the actions of the plaintiff. We do not believe such unilateral action is a valid basis upon which to confer jurisdiction. The capacity of L. L. Fredrick, specifically as it relates to his inability to contract on defendant's behalf has been previously discussed. This inability prohibits the conclusion that the occasion of Fredrick's visit to Opelousas resulted in the transaction of business. The visit of Messrs. Lelievre and Patteeuw to Opelousas provides the most significant incident in favor of finding jurisdiction. It is obvious by correspondence subsequent to the visit that the business was discussed at that time. However, the Long Arm Statute is phrased in terms of "business transactions", not "business discussions".[4] The former presumes something more than mere discussion, rather it contemplates the finalization of a negotiation process. The only transaction apparent from the record is the agreement of 1974 with its supplement. Further, the affidavit of Lelievre

---

**4.** The case of *Kalvar v. General Micrographics, Inc.*, 318 So.2d 71 (La.App.1975), relates an incident remarkably similar to the present one. In *Kalvar*, the President of the non-resident defendant came to Louisiana to inspect the plant of the plaintiff, and "contract terms and price were discussed". 318 So.2d at 72. However, the court in *Kalvar* noted that no formal agreement was confected during the Louisiana visit and subsequently held that no Long Arm jurisdiction would lie over the defendant in that case. The emphasis of *Kalvar* is vitiated some-

states that no commercial transactions were consummated during the Opelousas visit and plaintiff has not afforded any substantive indication otherwise.

Since the facts, as presented to the court, display no transaction of business in Louisiana out of which the present cause of action arose, the Louisiana Long Arm Statute is an inappropriate vehicle for the imposition of in personam jurisdiction over the defendant.

The principle of constitutional due process, as it relates to issues concerning non-resident parties to lawsuits is animated by a notion of fairness:

"The governing principle is the fairness of subjecting a defendant to suit in a distant forum. Only if the nonresident defendant has such 'minimum contacts' with the state that the maintenance of the suit does not offend a traditional notion of fair play and substantial justice, *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), or if the defendant has performed some act 'by which (it) purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws', *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), may this forum, consistently with due process, extend the Long Arm to embrace it." *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1234 (5th Cir. 1973).

As the above illustrates, there exists no series of objective touchstones whereby a court may declare, with complete assurance, that in personam jurisdiction over a certain non-resident party exists or not. We believe it is left to the judgment of the court in each instance, to assess the activities of the non-resident in the forum jurisdiction, and to determine if those activities constitute such a "presence" in the forum

what by the fact that the defendant there was a non-resident buyer, whereas in the instant case we have a non-resident seller. Jurisprudential distinctions as to the acquisition of in personam jurisdiction over non-residents, based solely

that it is not "unfair" to conclude that the non-resident has vouchsafed his right to be sued only at his own domicile. The only incidents of real presence had by the defendant in Louisiana were the visits of L. L. Fredrick in June 1974 and the visit of Lelievre and Patteeuw in February of 1975. Is it fair to require a non-resident defendant to travel many thousands of miles to defend a suit because of a maximum of two days spent by its representatives in a foreign forum where no commercial transactions took place? We submit it is not.

We therefore conclude that the plaintiff has failed to display affirmatively the presence of in personam jurisdiction over the defendant, SAPAG, in this state. For the aforementioned reasons, it is hereby ORDERED, ADJUDGED AND DECREED that the motion to dismiss filed by defendant SAPAG be hereby GRANTED. Defendant should submit a judgment consistent with this ruling within five days of date hereof.

on their status as a buyer or seller, has been subject to criticism by Law Review commentators. 34 La.L.Rev. 691 (1974); 18 Loy.L.Rev. 452 (1972); 45 Tul.L.Rev. 1081 (1971).